302 Ga. 142
FINAL COPY

S17A0700, S17A0701.  DELONEY v. THE STATE (two cases).

NAHMIAS, Justice.

Facing the death penalty, in 2001 Appellant Danny Deloney pled guilty to the felony murder of his six-year-old daughter, Porsha, and numerous other crimes.  Fourteen years later, he filed a motion for out-of-time appeal, which the trial court denied.  He appeals pro se, arguing that the trial court erred in denying his motion and in failing to hold an evidentiary hearing on the motion.  Pretermitting whether Appellant alleged a proper excuse for not filing a timely appeal, the record shows that he is not entitled to an out-of-time appeal and thus that the trial court was not required to hold an evidentiary hearing on his motion.  Accordingly, we affirm.

1.     (a)     The State presented the following factual basis for Appellant's guilty pleas.  On the night of November 16-17, 1999, Appellant called Tiffany Dixon, Porsha's mother, at her apartment in Decatur, Georgia.  Appellant told

Dixon that he was in Madison, Wisconsin, but 30 minutes later, he crawled through a window at Dixon's apartment, put a screwdriver to her neck, and told her that he was there to kill her, their daughter, Dixon's eight-year-old daughter from a previous relationship, and himself. Appellant retrieved a butcher knife and a roll of duct tape from the kitchen and held Dixon and the two girls at knife point overnight.

The next morning, for reasons that are unclear, Appellant allowed Dixon and the girls to get up and go about their business as though nothing were wrong. Dixon went to work, the girls went to school, and it appeared as though the situation had somehow resolved itself. Shortly after Dixon arrived at work, however, she called the apartment to see if Appellant was still there. He was, and it became clear to Dixon that he had checked at least one of the girls out from school. Appellant told Dixon, "I know you won't do anything stupid." Dixon went home and found the apartment dark and Appellant holding both the girls captive in a back bedroom with the butcher knife in his hand. Alarmed, Dixon started to flee, but Appellant grabbed her and ordered her to take off her clothes, including her underwear. Appellant then struck Dixon on the left arm with the butt of the knife, and she began screaming. Appellant threatened to kill

2

Dixon and said that he was going to cut one of the girls. Soon after, Dixon managed to call 911.

The police responded and were able to get Dixon out of the apartment but not the girls. The police tried to talk Appellant into letting the girls go, but Appellant, standing at the door, put the butcher knife to each girl's throat and demanded that Dixon return to the apartment. When Dixon refused, Appellant said, "I am going to turn on the gas and kill all of us," and slammed the door. The police then saw Appellant dragging the children around the apartment with him as he turned on the gas and set fire to various items. The police forced their way inside in an attempt to rescue the girls, but were unsuccessful due to the fire and smoke. Eventually a police officer was able to get inside the room with Appellant and the girls, but retreated when Appellant put the knife to the girls' throats and said, "Come and get me and we will all die." Soon after, flames blew out the double glass door at the back of the apartment. Firefighters then entered the apartment, found Appellant and the girls overcome by smoke inhalation, and took them outside. Porsha died as a result of smoke inhalation. Appellant survived, as did the older girl, who had a two-inch laceration on the left side of her forehead.

(b)    On December 9, 1999, a DeKalb County grand jury indicted Appellant for the malice murder of Porsha, felony murder during the commission of arson, first degree arson, three counts of aggravated assault with a deadly weapon, the kidnapping with bodily injury of Dixon's older daughter, the kidnapping of Dixon and Porsha, and two counts of cruelty to children for threatening to kill the girls.  On January 18, 2000, the State filed a notice of intent to seek the death penalty.  After committing additional serious crimes while awaiting trial, Appellant agreed to enter guilty pleas to some charges to avoid the possibility of receiving the death penalty.[1]

At a hearing on March 7, 2001, Appellant entered guilty pleas pursuant to North Carolina v. Alford, 400 U. S. 25 (91 SCt 160, 27 LE2d 162) (1970), to the felony murder of Porsha, three counts of aggravated assault with a deadly weapon, and three counts of simple kidnapping; the malice murder, first degree

[1] While at the DeKalb County Jail awaiting trial, Appellant and another inmate devised an escape plan.  On October 8, 2000, the other inmate lured a deputy sheriff to his immediate area, where Appellant held a toothbrush with a razor blade attached to the deputy's throat and overpowered him and then another deputy.  The inmates removed the deputies' clothes, handcuffed them, donned the deputies' clothes, and attempted to walk out of the jail.  Appellant and his associate made it from the cellblock area to the lobby.  Neither of them was wearing shoes, however, and other deputies, noticing that something was seriously amiss, stopped them before they made it out of the building.  A DeKalb County grand jury returned a second indictment against Appellant based on this incident.

4

arson, and cruelty to children charges were nolle prossed. In a colloquy with the court, Appellant acknowledged the constitutional rights that he was waiving by entering his pleas; denied that anyone had made any sort of threat or promise to influence him to plead guilty; and said that he had the opportunity to discuss the case thoroughly with his attorneys and was satisfied with their services and advice. Appellant signed a plea form with the same representations. One of Appellant's attorneys explained, and Appellant agreed, that he was entering pleas under Alford due to gaps in his memory regarding what happened in the apartment, his review of the State's evidence and understanding that the State had sufficient evidence to convict him, and his belief that there was a substantial risk that he would be found guilty of the charges if he went to trial.

The trial court found that there was a factual basis for the guilty pleas and that Appellant entered the pleas freely and voluntarily. The court further found beyond a reasonable doubt that the felony murder occurred during the commission of the offense of arson in the first degree and that this aggravating circumstance authorized the sentence of life in prison without the possibility of parole under the then-applicable sentencing scheme. See former OCGA § 17-10-32.1 (b) ("Unless the district attorney has given notice that the state intends

5

to seek the death penalty pursuant to the Uniform Rules of the Superior Courts, the judge shall sentence the defendant to life imprisonment. In cases where such notice has been given, the judge may sentence the defendant to death or life without parole only if the judge finds beyond a reasonable doubt the existence of at least one statutory aggravating circumstance as provided in Code Section 17-10-30."). At Appellant's urging, the court accepted his guilty pleas and sentenced him pursuant to the plea agreement to serve life in prison without the possibility of parole for felony murder during the commission of arson, with concurrent terms of years for the other convictions.[2] Appellant did not file a timely notice of appeal.[3]

(c) In June 2015, Appellant filed a motion for out-of-time appeal, alleging that both the trial court and his trial counsel failed to inform him of his right to appeal from his guilty pleas related to the 1999 crimes. In September 2015, Appellant filed a motion to vacate void sentence, contending that his

---

[2] Appellant also entered negotiated guilty pleas to aggravated assault on a peace officer, armed robbery, robbery, and false imprisonment in connection with his attempted escape from the DeKalb County Jail, see footnote 1 above, for which he was sentenced to terms of years running concurrently with his sentence of life without parole for felony murder.

[3] More than a decade later, in 2013, Appellant filed a habeas petition, which was dismissed as untimely in 2014. On January 12, 2015, this Court denied his application for a certificate of probable cause to appeal that ruling.

6

sentence of life without parole was improper. And in October 2015, Appellant filed a motion to withdraw his guilty pleas based on alleged ineffective assistance of counsel. On January 27, 2016, the trial court entered an order denying Appellant's motion for out-of-time appeal, and on February 16, the court entered separate orders denying the motion to vacate sentence and dismissing as untimely the motion to withdraw the guilty pleas. The process by which Appellant sought to appeal those three orders was complicated and need not be recounted here. Suffice it to say that his appeal of the order denying his motion for out-of-time appeal is properly before us, with the record coming under the two case numbers, and he makes no argument regarding the orders on his motion to vacate sentence and motion to withdraw guilty pleas, so we deem his appeal of those orders abandoned.

2.     Appellant contends that the trial court erred in denying his motion for out-of-time appeal because when he entered his guilty pleas in 2001, neither the trial court nor his attorneys informed him that he had a right to file an appeal. However, a defendant is entitled to a timely appeal from a conviction entered on a guilty plea "only to the extent that the issues presented on appeal can be resolved by reference to the existing record." Mims v. State, 299 Ga.

7

578, 580 (787 SE2d 237) (2016).  Thus, if the claims that a defendant belatedly seeks to raise on appeal require factual development, an out-of-time appeal is unavailable.  See Stephens v. State, 291 Ga. 837, 838 (733 SE2d 266) (2012). Moreover, if the claims that the defendant seeks to raise on appeal *can* be resolved by reference to facts in the existing record, he must show that the claims would be resolved *in his favor*, or an out-of-time appeal is properly denied.  See id. at 839.  See also Grace v. State, 295 Ga. 657, 659 (763 SE2d 461) (2014).  In addition, before being entitled to an out-of-time appeal, a defendant must allege and prove an excuse of constitutional magnitude for failing to file a timely direct appeal, which usually is done by showing that the delay was caused by his trial counsel's ineffective assistance in providing advice about or acting upon an appeal.  See Stephens, 291 Ga. at 837-838.  See also Grace, 295 Ga. at 658.

Appellant seeks to raise several claims in an out-of-time appeal.  The first claim is that he did not knowingly and voluntarily enter his guilty pleas, because he did not understand all the rights he was waiving.  However, as the trial court found in denying the motion for out-of-time appeal,

8

the record shows that (1) [Appellant] completed and signed the plea form, (2) the trial court confirmed that [Appellant] understood he was waiving certain constitutional rights by pleading guilty, (3) the trial court verified that [Appellant] understood what he was doing and that he was entering his plea of guilt freely and voluntarily, and (4) the State provided the factual bases for the charges against [Appellant] during the hearing on his guilty plea.

Appellant cannot show from the existing record that his pleas were not knowingly and voluntarily entered, so this claim provides no basis for an out-of-time appeal.

Appellant's next two claims are based on the nolle prosequi entered on the first degree arson charge of the indictment as part of his negotiated plea agreement. According to Appellant, the entry of the nolle prosequi meant that the State did not have enough evidence to prove that he committed first degree arson, which supposedly made both his guilty plea to felony murder with arson as the predicate offense invalid for lack of a sufficient factual basis and his sentence of life without the possibility of parole improper for lack of a statutory aggravating circumstance.

However, Appellant's premise — that the entry of the nolle prosequi demonstrates that he did not set the fire that caused his daughter's death and that "the basis of the plea does not exist" — is incorrect. A "[n]olle prosequi does

9

not adjudicate innocence or guilt unless the accused has been placed in jeopardy," King v. State, 300 Ga. 180, 181 (794 SE2d 110) (2016), and "[t]he mere entry of nolle prosequi does not indicate an absence of the commission of a criminal act," Drake v. State, 170 Ga. App. 846, 847 (1) (318 SE2d 721) (1984). A defendant may be convicted and sentenced for felony murder without being convicted of the predicate felony; indeed, a guilty plea or verdict on the predicate felony merges into the felony murder conviction for purposes of sentence and judgment. See OCGA § 16-1-7 (a) (1); White v. State, 278 Ga. 499, 501 (604 SE2d 159) (2004).

In accepting Appellant's guilty pleas, the trial court explicitly found that there was "a factual basis for the entry of each of [his] pleas," and the plea hearing transcript shows that the State outlined in detail a sufficient factual basis for Appellant's guilty pleas, including his intentionally setting fire to Dixon's apartment, which resulted in his daughter's death. See OCGA §§ 16-5-1 (c) (defining felony murder to be "when, in the commission of a felony, [a person] causes the death of another human being irrespective of malice"), 16-7-60 (a) (1) (defining arson in the first degree to include knowingly damaging any dwelling house of another without consent by means of fire). As for the

10

statutory aggravating circumstance supporting Appellant's sentence of life in prison without the possibility of parole, the trial court explicitly found beyond a reasonable doubt that "the murder as alleged in . . . Count 2 [i.e., felony murder] was committed in the offense of arson in the first degree," and that finding too is fully supported by the record. See OCGA § 17-10-30 (b) (2) (establishing as a statutory aggravating circumstance that "[t]he offense of murder . . . was committed while the offender was engaged in the commission of . . . arson in the first degree").

Appellant's fourth claim is that his attorneys provided ineffective assistance by failing to get him a psychiatric evaluation before he entered his guilty pleas. However, this claim requires factual development beyond the existing record, so it provides no basis for the grant of an out-of-time appeal. See Grace, 295 Ga. at 659; Hagan v. State, 294 Ga. 716, 718 (755 SE2d 734) (2014).

Finally, Appellant contends that the trial court abused its discretion in denying his motion for out-of-time appeal without holding an evidentiary hearing to determine why he did not file a timely appeal. However, a hearing to determine the reason that a defendant did not file a timely appeal from a

11

guilty plea is not required unless the claims that he belatedly seeks to raise on appeal can be resolved in his favor from the existing record. See Stephens, 291 Ga. at 839; Marion v. State, 287 Ga. 134, 135 (695 SE2d 199) (2010). In light of what we have said above, the trial court was not required to hold a hearing before denying Appellant's motion for out-of-time appeal.

Judgments affirmed. All the Justices concur.

Decided October 2, 2017.

Murder. DeKalb Superior Court. Before Judge Adams.

Danny E. Deloney, pro se.

Sherry Boston, District Attorney, Anna G. Cross, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.