304 Ga. 271
FINAL COPY

S18A0777.  FRISBY v. THE STATE.

NAHMIAS, Justice.

Appellant Christopher Frisby challenges the trial court's order denying his motion for an out-of-time appeal of his 1995 convictions based on guilty pleas to malice murder and other crimes related to the stabbing death of Karen Benning and the attempted murder of Carrie Missinne.  Pretermitting whether Appellant has shown a proper excuse for not filing a timely appeal, the record shows that he is not entitled to an out-of-time appeal.  Accordingly, we affirm.

1.     On March 23, 1994, a Chatham County grand jury indicted Appellant for the following crimes in connection with Benning's death: malice murder, felony murder, kidnapping with bodily injury, rape, armed robbery, two counts of burglary, theft by taking, and six counts of possession of a firearm during the commission of a crime.  The indictment also charged Appellant with the attempted murder of Missinne and one count of burglary of her apartment.

On May 5, 1995, Appellant entered negotiated guilty pleas to malice murder, kidnapping with bodily injury, rape, armed robbery, attempted murder, two counts of burglary (one of Benning's apartment and the other of Missinne's), and theft by taking. In exchange, the State agreed to nolle pros the remaining charges and to recommend that the court sentence Appellant to serve two consecutive terms of life in prison for the murder and kidnapping, with the possibility of parole, and concurrent and consecutive terms adding an additional 40 years for the other convictions.

At the plea hearing, the prosecutor represented that the evidence, if there were a trial, would show the following. On September 8, 1993, Benning, who was 22 years old, was stabbed 15 times in the neck, face, chest, stomach, and back with a pair of scissors in the bedroom of her apartment in Savannah. The next morning, the police were called when Benning failed to arrive for work; they found her dead, and her white Mitsubishi Eclipse, the keys to the car, a watch, a silver spoon, and two necklaces were missing. The police also found a bullet in the ceiling of Benning's apartment.

Later that day, the police received information from witnesses who said that Appellant, who was then 16 years old, and his friend Timothy Fox had

driven Benning's Eclipse to their high school, brought a pistol to the school, and told classmates that they had beaten, raped, and stabbed Benning. They also said that they had broken into Missinne's apartment to kill her and take her car, but when they discovered that she was not home, they took a CD player and some CDs and left. On September 10, Benning's Eclipse was involved in a hit and run accident, and minutes later, the police found the car abandoned on the side of the road; a witness to the accident identified Appellant as the driver of the car. In the car, the police found a .32-caliber pistol, a school tardy slip for Appellant, and school books that belonged to Appellant and Fox.

Appellant was arrested later that day, and after being advised of his constitutional rights and in the presence of his mother and stepfather, he gave a detailed confession. He told the police that several days before Benning's murder, he, Fox, and another friend planned to break into Missinne's apartment, kill her, and steal her car. According to Appellant, when he and his friends arrived at Missinne's apartment and discovered that she was not there, he broke a window; entered the apartment; took a CD player, some CDs, change, and a jewelry box; and left. Appellant said that a couple of days later, he and Fox saw Benning entering her apartment and made a plan to break in and take her car.

3

They returned to her apartment on the afternoon of September 8 to execute their plan. Appellant was carrying a .32-caliber pistol he had taken from his father's drawer, and he and Fox forced their way into the apartment after Benning answered their knock on her door. Appellant told the police that he and Fox raped Benning, and she then grabbed Appellant's pistol and fired it at them but missed. Appellant grabbed Benning and held her down on the bedroom floor, and Fox stabbed her repeatedly with a pair of scissors. Benning died moments later, and Appellant and Fox put her on the bed and wrapped blankets around her. They then wiped down the apartment, took Benning's car keys, and left with Appellant driving Benning's car.

Fox also confessed, and his statement corroborated Appellant's. During their investigation, the police recovered from Appellant and Fox the watch, spoon, and necklaces stolen from Benning's apartment. The police also determined that the bullet found in the ceiling of the apartment was fired from the pistol that belonged to Appellant's father and was later found in the Eclipse. In addition, DNA testing showed the presence of Appellant's semen on Benning's body.

During his plea colloquy with the trial court, Appellant said that he

4

understood the charges against him and the consequences of the negotiated plea agreement. The court then asked, "Do you understand that you have the right to enter a plea of not guilty, and that by entering this plea, you are giving up your right to a jury trial?" and Appellant answered, "Yes, sir." The court asked Appellant if he understood that "at a jury trial . . . you would have a right not to testify against yourself?"; Appellant replied, "Yes, sir." He also told the court that he understood that he was waiving his right to testify, offer evidence, and confront any witnesses against him at a trial, that he understood the presumption of innocence, and that no one had made any promise or threat to make him plead guilty. The court added, "Do you understand that by pleading not guilty or by remaining silent and not doing anything, you would get a jury trial?"; Appellant responded, "Yes, sir." Appellant then entered his guilty pleas. The court asked him if he was pleading guilty because he was in fact guilty, and Appellant replied, "Yes, sir." Appellant confirmed that he had discussed the pleas with his attorney and that he was satisfied with his attorney's performance. Appellant also signed a guilty plea form verifying his answers to the court during the plea colloquy. After finding that there was "more than a sufficient factual basis" to believe the crimes were committed as alleged and that Appellant had made a

knowing, intelligent, and voluntary waiver of his constitutional rights, the court accepted the guilty pleas.

The trial court sentenced Appellant in accordance with the plea agreement. The court then allowed Benning's sister to make a statement. As she addressed the court, Benning's father lunged at Appellant, and when deputy sheriffs attempted to assist Appellant, he was attacked by another member of the audience. According to the plea hearing transcript, "additional members of the audience then entered the bench area and a fracas ensued with other deputies which lasted approximately four minutes." The courtroom was eventually cleared, and the proceedings did not resume.

More than 22 years passed before Appellant filed a pro se motion for an out-of-time appeal on June 21, 2017, claiming that he was denied his right to appeal his convictions by his plea counsel's failure to file a timely direct appeal. The State's response attached Appellant's signed guilty plea form and the plea hearing transcript. On August 1, 2017, the trial court denied the motion for an out-of-time appeal without a hearing, concluding that the existing record showed that the claims Appellant said he would assert if he were granted an appeal lacked merit. Appellant, who is still representing himself, filed a timely

6

notice of appeal.

2.    Appellant contends that the trial court erred in denying his motion for an out-of-time appeal because when he entered his guilty pleas in 1995, neither the trial court nor his attorney informed him that he had a right to file an appeal.

> However, a defendant is entitled to a timely appeal from a conviction entered on a guilty plea "only to the extent that the issues presented on appeal can be resolved by reference to the existing record." Thus, if the claims that a defendant belatedly seeks to raise on appeal require factual development, an out-of-time appeal is unavailable. Moreover, if the claims that the defendant seeks to raise on appeal *can* be resolved by reference to facts in the existing record, he must show that the claims would be resolved *in his favor*, or an out-of-time appeal is properly denied. In addition, before being entitled to an out-of-time appeal, a defendant must allege and prove an excuse of constitutional magnitude for failing to file a timely direct appeal, which usually is done by showing that the delay was caused by his trial counsel's ineffective assistance in providing advice about or acting upon an appeal.

Deloney v. State, 302 Ga. 142, 145 (805 SE2d 881) (2017) (citations omitted; emphasis in original).

Appellant asserts several claims challenging the validity of his guilty pleas, contending that the State failed to establish a sufficient factual basis for his armed robbery conviction; that the trial court failed to inform him of his

7

privilege against compelled self-incrimination at trial; and that he did not knowingly, intelligently, and voluntarily enter his pleas because he was only 18 years old when he pled guilty and because he was attacked by Benning's family at the plea hearing. These claims can be resolved by reference to the existing record, but they are not resolved in Appellant's favor.

The plea hearing transcript shows that the State proffered a detailed factual basis for the armed robbery count against Appellant, including his confession that he and his accomplice Fox planned to steal Benning's car; forced their way into her apartment, with Appellant carrying a pistol; took her car keys from her apartment; and drove away in her car. See OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon . . . ."). Appellant's confession was well-corroborated; as the trial court noted at the plea hearing, the State set forth "more than a sufficient factual basis" for all of the charges to which he pled guilty.

Regarding Appellant's claim that he was not informed of his right against self-incrimination, he asserts, relying on Wilson v. Kemp, 288 Ga. 779 (727

SE2d 90) (2011), overruled in part by <u>Lejeune v. McLaughlin</u>, 296 Ga. 291, 297-299 (766 SE2d 803) (2014), that during the plea colloquy the trial court specifically limited its discussion of Appellant's right to remain silent to the guilty plea hearing itself. He maintains that he was never informed that he would have the right not to testify against himself if he decided to proceed to trial. However, the plea hearing transcript and the guilty plea form show that the trial court explicitly advised Appellant of the constitutional rights he would be waiving by pleading guilty, including the right not to testify at trial. See <u>Phelps v. State</u>, 293 Ga. 873, 876 (750 SE2d 340) (2013). The court separately told Appellant that he could also remain silent during the plea hearing, with the result that he would get a jury trial.

The record further shows that, notwithstanding Appellant's young (but adult) age at the time of his guilty pleas, he understood his rights and the consequences of waiving them by pleading guilty. See, e.g., <u>Maddox v. State</u>, 278 Ga. 823, 826 (607 SE2d 587) (2005) ("Despite appellant's young age of 17, the record in this case supports the trial court's conclusion that appellant knowingly and voluntarily entered his guilty pleas."). As for the assault by Benning's family, it took place *after* the plea colloquy. After affirming that he

9

was not pleading guilty because of any threats, Appellant had entered his guilty pleas, and after finding that the pleas were knowingly, intelligently, and voluntarily entered, the court had pronounced Appellant's sentence in accordance with his negotiated plea deal. The melee that then ensued could not retroactively affect Appellant's understanding of the consequences of his guilty pleas. For these reasons, Appellant cannot show from the existing record that his guilty pleas were invalid, and his claims therefore provide no basis for an out-of-time appeal. See Deloney, 302 Ga. at 145-146.

3.      Appellant also contends that his plea counsel provided ineffective assistance because his lawyer failed to file a motion for a continuance and a motion for funds to obtain an expert witness to challenge the State's DNA evidence against Appellant. However, Appellant did not raise this claim in his motion for an out-of-time appeal, and the trial court did not rule on it. He is not entitled to raise the claim for the first time on appeal, see Hollins v. State, 287 Ga. 233, 233-234 (695 SE2d 23) (2010), and in any event, the claim is not one that can be decided in his favor based on the existing record, see Deloney, 302 Ga. at 147.

4.      Finally, Appellant contends that the trial court erred by scheduling

an evidentiary hearing without first permitting Appellant to respond to the State's brief opposing his motion for an out-of-time appeal. The record shows, however, that the court neither scheduled nor held a hearing on Appellant's motion. Instead, after reviewing briefs from Appellant and the State, the trial court properly denied the motion without holding a hearing to determine the reason for Appellant's failure to file a timely appeal because, as discussed above, none of the claims he sought to raise on appeal can be resolved in his favor on the existing record. See Deloney, supra. Thus, this contention is not supported by the record and has no merit.[1]

Judgment affirmed. Hines, C. J., Melton, P. J., Benham, Hunstein, Blackwell, Boggs, and Peterson, JJ., concur.

---

[1] We accordingly deny Appellant's motion filed in this Court seeking a remand of his case to the trial court with the direction to hold an evidentiary hearing.

11

Decided August 20, 2018.

Murder. Chatham Superior Court. Before Judge Walmsley.

Christopher D. Frisby, pro se.

Meg E. Heap, District Attorney, Christine S. Barker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.