In the Supreme Court of Georgia

Decided: June 6, 2016

S16A0542. MIMS v. THE STATE.

BLACKWELL, Justice.

In September 1985, Furman Mims pleaded guilty and was convicted of the murder and kidnapping of Robert Holbert. For these crimes, Mims was sentenced to consecutive terms of imprisonment for life. Twenty-eight years later, Mims filed a motion for leave to take an out-of-time appeal, contending that the acceptance of his plea was erroneous in several respects, and alleging that he was denied the opportunity to take a timely appeal because his lawyer failed to advise him of his right to appeal. The trial court denied the motion without a hearing, finding that the record reveals no error in the acceptance of the plea, and so, any appeal would prove unsuccessful. Mims appeals,[1] and we affirm.

_____

[1] Mims represented himself in the trial court in connection with his motion for an out-of-time appeal, and he continues to represent himself in this appeal. Although Mims requested the appointment of counsel, this Court previously has held that there is no right to appointed counsel in connection with a motion for out-of-time appeal. See Pierce v. State, 289 Ga. 893, 894 (1) (717 SE2d 202) (2011).

1. We begin with the principles of law that inform our review of the denial of a motion for an out-of-time appeal. Our law permits a criminal defendant to take an appeal of right from a final judgment of conviction and sentence, see Keller v. State, 275 Ga. 680, 680 (571 SE2d 806) (2002), but even an appeal of right must be taken in a manner consistent with the laws of appellate procedure, and if it is not, the right of appeal may be forfeited. See State v. Denson, 236 Ga. 239, 240 (223 SE2d 640) (1976). A criminal defendant, however, is entitled to the effective assistance of counsel in connection with his appeal of right, see McAuliffe v. Rutledge, 231 Ga. 1, 2-3 (200 SE2d 100) (1973), and if his exercise of the right of appeal is frustrated by a denial of the guarantee of effective assistance, the Constitution demands a remedy. See Rowland v. State, 264 Ga. 872, 874-875 (2) (452 SE2d 756) (1995). See also Gable v. State, 290 Ga. 81, 85-86 (2) (b) (720 SE2d 170) (2011). Consequently, when a defendant is denied the effective assistance of counsel and loses his right of appeal as a result, this Court has held that the defendant is entitled to take an out-of-time appeal. See Rowland, 264 Ga. at 875 (2). See also Kemp v. State, 292 Ga. 795, 795 (741 SE2d 652) (2013); Stephens v. State, 291 Ga. 837, 837-838 (2) (733 SE2d 266) (2012); Grantham v. State, 267 Ga. 635, 635 (481 SE2d 219) (1997).

Whether the circumstances of a particular case warrant an out-of-time appeal is a question committed in the first instance to the trial courts. See Rowland, 264 Ga. at 875-876 (2). The refusal of an out-of-time appeal, however, generally is itself appealable as of right. See Simmons v. State, 276 Ga. 525, 525 n.2 (579 SE2d 735) (2003).[2]

When a court considers a claim in connection with a motion for out-of-time appeal that a defendant was denied effective assistance, the court usually will apply the familiar standard of Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).[3] See Stephens, 291 Ga. at 838-839 (2). To prevail under that standard, a defendant must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient

---

[2] If a defendant already had an appeal of right from his conviction and sentence, he cannot pursue a second appeal by way of a motion for out-of-time appeal. In those circumstances, the defendant is not entitled to appeal from the refusal of an out-of-time appeal. See Richards v. State, 275 Ga. 190, 191 (563 SE2d 856) (2002) ("Since an out-of-time appeal is not available to one whose conviction has been affirmed on direct appeal, the denial of a motion for out-of-time appeal filed by such a defendant is not subject to direct appeal to the appellate courts." (Citation omitted)).

[3] There are special cases in which a claimed denial of effective assistance may require the application of a different standard. See, e.g., Holloway v. Arkansas, 435 U. S. 475, 487-491 (III) (98 SCt 1173, 55 LE2d 426) (1978) (attorney conflict of interest); Cuyler v. Sullivan, 446 U. S. 335, 348-350 (IV) (B) (100 SCt 1708, 64 LE2d 333) (1980) (attorney conflict of interest); United States v. Cronic, 466 U. S. 648, 659-662 (III) (104 SCt 2039, 80 LE2d 657) (1984) (complete denial of counsel).

3

performance. See Strickland, 466 U. S. at 687 (III). And to show these things in the context of a motion for out-of-time appeal, the defendant must demonstrate that, if a timely appeal had been taken, it would have been successful. See Stephens, 291 Ga. at 838-839 (2). See also Martin v. McLaughlin, 298 Ga. 44, 45 (779 SE2d 294) (2015) (discussing claims of ineffective assistance of appellate counsel generally); Spriggs v. State, 296 Ga. 542, 543 (769 SE2d 392) (2015) (defendant could not have been prejudiced by failure of lawyer to file appeal that had no merit). Moreover, to show prejudice in this context, the defendant also must show that the deficient performance of his lawyer was, in fact, the cause of his failure to timely appeal. See Grace v. State, 295 Ga. 657, 658 (2) (a) (763 SE2d 461) (2014) (motion for out-of-time appeal properly denied where defendant "did not allege that ineffective assistance was the cause of his failure to file a timely direct appeal"). See also McMullen v. State, 292 Ga. 355, 356 (2) (737 SE2d 102) (2013) (same).

There are special considerations, however, when a defendant seeks an out-of-time appeal from a judgment of conviction and sentence entered upon a plea of guilty. Even when a defendant has pleaded guilty, he still may be entitled to take an appeal of right, but only to the extent that the issues presented on appeal

4

can be resolved by reference to the existing record. See Smith v. State, 253 Ga. 169, 169 (316 SE2d 757) (1984). See also Hagan v. State, 294 Ga. 716, 718 (3) (a) (755 SE2d 734) (2014). Because an out-of-time appeal is a remedy for the loss of an appeal of right, "a defendant is not entitled to an out-of-time appeal unless he had the right to file a direct appeal." Burch v. State, 293 Ga. 816, 816 (750 SE2d 141) (2013) (citation and punctuation omitted). See also Henderson v. State, 293 Ga. 6, 7 (743 SE2d 19) (2013). For that reason, in the case of a guilty plea, "if the issues that the defendant seeks to appeal cannot be resolved from the record, he had no right to file a direct appeal, and therefore he has no right to file an out-of-time appeal." Hagan, 294 Ga. at 718 (3) (a) (citation and emphasis omitted). See also Burch, 293 Ga. at 816 ("[T]he ability to decide the appeal based on the existing record [often] is the deciding factor in determining the availability of an out-of-time appeal when the defendant has pled guilty." (Citation and punctuation omitted)). On the other hand, if the defendant seeks to raise claims on appeal that can be resolved by reference to the existing record, but the record shows that those claims are without merit, then a timely appeal would have been unsuccessful, and the defendant cannot show that he was denied the effective assistance of counsel in connection with his right of appeal.

5

See Stephens, 291 Ga. at 839 (2). See also Smith v. State, 287 Ga. 391, 403, n. 5 (697 SE2d 177) (2010); Marion v. State, 287 Ga. 134, 134 (1) (695 SE2d 199) (2010). In that event, the motion for out-of-time appeal can be denied without an evidentiary hearing to determine whether the frustration of the right of appeal is, in fact, attributable to counsel. See Stephens, 291 Ga. at 839 (2). "In sum, in deciding a motion for out-of-time appeal, the trial court must hold an evidentiary hearing to determine whether defense counsel's unprofessional conduct was the cause of the untimeliness only where the motion raises an issue that would have been meritorious on the existing record had a timely appeal been taken." Id. (citation omitted). See also Grace, 295 Ga. at 659 (2) (b). With these principles in mind, we turn now to the denial of Mims's motion for out-of-time appeal.

2. In this case, the trial court denied the motion for out-of-time appeal without an evidentiary hearing, concluding that the existing record forecloses each of the claims of error that Mims seeks to press on appeal. In his motion, Mims asserted that the acceptance of his plea was erroneous in five respects. First, he said, the record of the plea proceeding fails to show that he was advised of his privilege against self-incrimination. Second, he alleged that the record likewise fails to show that he was advised of his right to confrontation. Third,

6

Mims asserted that the record reveals no factual basis for his plea. Fourth, the record shows, he said, that his plea was induced by impermissible promises of leniency. And finally, Mims contended generally that his plea was not a knowing, intelligent, and voluntary one. To the extent that these claims of error can be resolved by reference to the existing record, we agree with the trial court that the record refutes the claims. And to the extent that these claims of error require more factual development, Mims must look for redress by way of a petition for a writ of habeas corpus, rather than an out-of-time appeal. See Stephens, 291 Ga. at 838 (2).

(a) We begin with the first and second claims of error — that the record fails to show that Mims was advised of his privilege against self-incrimination and the right to confrontation — and we conclude that those claims are refuted by the record. When a judgment of conviction and sentence are entered upon a plea of guilty, the record must establish that the defendant at the time of his plea was aware of "the essential constitutional protections that the accused would enjoy if he instead insisted upon a trial, protections that he waives by pleading guilty and consenting to judgment without a trial." Lejeune v. McLaughlin, 296 Ga. 291, 292 (1) (766 SE2d 803) (2014) (citations omitted). As the United

States Supreme Court explained in <u>Boykin v. Alabama</u>, 395 U. S. 238 (89 SCt 1709, 23 LE2d 274) (1969), among these essential protections are the constitutional privilege against self-incrimination and the constitutional right of confrontation. See 395 U. S. at 243.[4]

Mims correctly notes that the transcript of his plea proceeding does not itself show that the plea judge — or anyone else — specifically advised Mims in connection with his plea of the privilege against self-incrimination or the right of confrontation. Even so, the record of the plea does not consist solely of the transcript. It includes a written plea and acknowledgment-and-waiver-of-rights

---

[4] In <u>Boykin</u>, the United States Supreme Court also identified the constitutional right to trial by jury as an essential protection of which an accused must be aware at the time he enters a plea of guilty. 395 U. S. at 243. That Mims was advised of his right to trial by jury in this case is undisputed. Indeed, the transcript of his plea proceeding includes the following exchange:

> THE COURT: You have a right under the law of this state and country to plead either guilty or not guilty. In a not guilty plea which you could enter if you wish would entitle you to a jury trial. We have jury sessions operating around the — virtually around the clock. Within the next few weeks, you would have a jury session to consider the case against you. If you plead not guilty, you would be entitled to a jury trial to determine guilt or innocence. Do you understand?
> MIMS: Yes, sir.
> THE COURT: Do you understand that a guilty plea, however, gives up, for the accused, and waives for all time any right to a jury trial. Do you understand that?
> MIMS: Yes, sir.

form — bearing the signatures of Mims and his lawyer — that advised Mims of his privilege against self-incrimination[5] and the right of confrontation,[6] on which Mims acknowledged that he understood his rights, and on which his lawyer certified that he had reviewed each item of the form with Mims and believed that Mims understood his rights. The record also includes an order of the plea judge — signed contemporaneously with the entry of the plea — in which the court pointed to the acknowledgment-and-waiver-of-rights form and found that Mims understood and voluntarily had waived his privilege against self-incrimination and right of confrontation. We previously have held that such a record is sufficient to show that an accused properly was advised of the essential

---

[5] The first question on the form inquires: "Do you know and understand that you don't have to say, sign, or do anything that will show or tend to show you are guilty unless you want to?" This Court previously has held that this very question was sufficient in connection with a guilty plea to advise an accused of his privilege against self-incrimination. See Brown v. State, 290 Ga. 50, 52 (2) (718 SE2d 1) (2011). Following this question on the form, Mims's initials appear so as to indicate an affirmative response to the question.

[6] The ninth question on the form inquires: "Do you know and understand that you have the right to make the State or District Attorney bring in witnesses to testify against you under oath at a Court trial, and that you and your lawyer have the right to question and cross-question these witnesses under oath?" This Court has held that similarly-worded questions were adequate to advise an accused of his right of confrontation. See, e.g., Coulter v. State, 295 Ga. 699, 702, n. 3 (763 SE2d 713) (2014) ("You understand that if you elected to go through with your jury trial you would be able to cross-examine or ask questions of the witnesses that the State might bring?"). Following this question on the form, Mims's initials appear so as to indicate an affirmative response.

constitutional protections that he would waive by his entry of a guilty plea. See

Burch, 293 Ga. at 816-817 (relying on acknowledgment-and-waiver-of-rights

form, certification of counsel, and contemporaneous order of plea judge). See

also Brown v. State, 290 Ga. 50, 51-52 (1) (718 SE2d 1) (2011) (together with

testimony and lawyer certification that accused had read and understood plea

form, form was sufficient to establish that accused was aware of his essential

rights); State v. Cooper, 281 Ga. 63, 64-66 (2) (636 SE2d 493) (2006) (together

with evidence that accused reviewed and understood plea form, form was

adequate to show that accused was advised of his essential rights); Beckworth

v. State, 281 Ga. 41, 42 (635 SE2d 769) (2006) ("As a general rule, the

attorney's testimony coupled with proper waiver forms would be sufficient to

fill the void left by a silent record."); Spencer v. State, 260 Ga. 640, 648-649

(10) (b) (398 SE2d 179) (1990) (relying on plea questionnaire, certification of

counsel, contemporaneous order of plea judge, and recollection of plea judge

about his use of plea questionnaires).[7]

---

[7] This is not a case in which the record fails to show that a lawyer reviewed the form with the accused or that the accused otherwise understood the form. Cf. State v. Hemdani, 282 Ga. 511, 512 (651 SE2d 734) (2007) (noting that "the form contains no representations from Hemdani's attorney regarding any interaction she may have had with her client regarding the plea form or its contents"); King v. State, 270 Ga. 367, 367-368 (509 SE2d 32)

Although Mims claims in this Court that he did not personally affix his

signature to the written plea and acknowledgment-and-waiver-of-rights form

(1998) (although defendant and plea judge signed written plea form, prosecuting attorney stipulated that she filled out the form for the defendant and did not explain the form to the defendant). Nor is this a case in which the record fails to show that the plea court was aware at the time of the plea that the accused had been separately advised of his essential rights. Compare Clowers v. Sikes, 272 Ga. 463, 465 (532 SE2d 98) (2000) (although prosecuting attorney may have advised accused of his rights, he did not do so in the presence of the plea judge, nor did the record reflect that the judge otherwise was informed of such at the time of the plea). Nor is this a case in which the relevant constitutional rights are not actually disclosed on the face of the plea form included in the record. Compare Beckworth, 281 Ga. at 42 ("[A] review of the record in this case demonstrates that the waiver forms of both plea hearings at issue contain only one of the three Boykin rights . . . ."); Pullium v. State, 278 Ga. 354, 355 (602 SE2d 833) (2004) ("Although the form indicates that Pullium waived certain rights, it nowhere indicates that he was advised of, and waived, the three constitutional rights required for a valid guilty plea . . . .").

       To the contrary, the form in this case plainly discloses the two rights of which Mims alleges he was unaware. Moreover, the record includes a written certification of defense counsel, in which the lawyer certified to the plea court as follows:

> I am counsel for the defendant in the above case. I hereby certify that I have investigated the facts of this case and the evidence available to the State and I believe that it is in the best interests of the defendant to plead guilty . . . to the offense(s) specified or indicated.
>
>     I further certify that I have reviewed all of the above questions [contained in the written plea and acknowledgment-and-waiver-of-rights form] with [Mims] and have assured myself that [Mims] knows and understands them and that he has indicated his . . . rights and his . . . waiver of them by initialing the appropriate blank after each question.

Moreover, although the transcript does not indicate that the plea judge directly inquired of Mims in the course of the plea colloquy about the written plea and acknowledgment-and-waiver-of-rights form, both the prosecuting attorney and defense counsel spoke of the form during the plea proceeding. Finally, the plea court pointed to the form in its contemporaneous order as a basis for its finding that Mims was advised of his essential constitutional rights.

11

upon which the State relies,[8] the record does not bear out that allegation. On a motion for out-of-time appeal, Mims is limited to the existing record, and on that record, even if he had taken a timely appeal to assert his first and second claims of error, the appeal would have proved unsuccessful. If further factual development might establish a basis for setting aside the plea upon these grounds, Mims must develop the facts by way of a petition for a writ of habeas corpus. See Rhodes v. State, 296 Ga. 418, 420 (2) (a) (768 SE2d 445) (2015).

(b) Turning to the third claim — that no factual basis for the plea was laid upon the record — we find that it is squarely refuted by the record. The transcript of the plea colloquy shows that the plea judge recited the relevant allegations of the indictment,[9] confirmed with Mims that he understood the charges to which he intended to plead guilty, and confirmed that Mims, in fact, intended to plead guilty. Reference to the factual allegations of an indictment may be sufficient to lay a factual basis for a plea, and in this case, we conclude

---

[8] We note that Mims did not assert this claim about the form in connection with his motion for out-of-time appeal below. He appears to assert it for the first time in this Court.

[9] The indictment charged Mims in five counts, but he pleaded guilty to only two, and the other counts were dismissed by nolle prosequi. At the plea, the judge recited only the allegations contained in the two counts to which Mims was pleading guilty.

12

that an adequate factual basis was established on the record.[10] Cf. Green v. State,

265 Ga. 263, 265 (2) (454 SE2d 466) (1995) ("[W]e find that the indictment

provided ample information from which the trial court could discern that the

facts alleged by the state actually satisfied the elements of the charges to which

Green was pleading guilty."). See also Lewis v. State, 293 Ga. 544, 548 (1) (748

SE2d 414) (2013); Henderson, 293 Ga. at 7, n. 2 (1). If Mims had taken a timely

appeal to assert the third claim of error, it would have proved unsuccessful.

(c) About the fourth claim — that the plea was induced by impermissible

promises of leniency — the transcript shows that the plea judge addressed this

issue with Mims at some length in the plea proceeding. Before discussing

promises of leniency, the plea judge confirmed that Mims understood the

possible sentences to which his guilty plea would expose him:

---

[10] Referring to the allegations of the indictment, the plea judge said:
Two counts of the indictment, that we're dealing with, for anticipated guilty pleas. First count, the grand jurors say that on the 10th of November, 1984, you did unlawfully with malice [a]forethought cause[] the death of Robert C. Holbert, a human being[,] by shooting him with a certain pistol, a deadly weapon. And the second count, the grand jurors of the county charge you with the offense of kidnapping. They say that on the 10th of November, 1984[,] in this state and county, you did abduct Robert C. Holbert, person, without lawful authority. You held him against his will. That you, in fact, caused him to receive bodily injury, during that kidnapping, of a gunshot wound from which he died. Those are the two counts of the indictment.

THE COURT: [I]f you plead guilty, as you have indicated and continue to indicate you wish to do, this Court will sentence you today within the terms of the law. Do you understand?

MIMS: Yes, sir.

THE COURT: Do you understand that for the offenses you're charged with, murder and kidnapping with bodily injury, that life sentences could be imposed in the case — in each case?

MIMS: Yes, sir.

THE COURT: That those life sentences could run consecutively. Do you understand that?

MIMS: Yes, sir.

Shortly thereafter, the plea judge directly asked Mims about any promises that the court would impose a lenient sentence if Mims entered a plea of guilty. At first, Mims made reference to an alleged assurance from a law enforcement officer that, if Mims "helped," the officer would see that Mims did not get "[a] whole bunch of time." After further discussion with Mims and his lawyer, however, the plea judge asked Mims: "Has anyone ever suggested that I'm going to give you some lighter sentence, easier sentence than the two consecutive life sentences that are possible under the law?" To this question, Mims responded unequivocally: "No, sir. They hadn't named what type of

14

sentence." Moreover, the written plea and acknowledgment-and-waiver-of-rights form reflects that Mims knew that the prosecuting attorney would recommend two consecutive life sentences, which is precisely what the prosecuting attorney, in fact, recommended. The plea judge subsequently found that Mims entered the plea "freely and voluntarily . . . uninfluenced by the slightest hope of benefit or the remotest fear of injury."

The record fails to show that this finding was erroneous. Although reference was made to an assurance of a law enforcement officer, that alleged assurance — as it is reflected in the existing record — is vague, it does not refer to any particular sentencing options, and in any event, it seems to relate to Mims cooperating with law enforcement, not entering a plea. The alleged assurance says nothing about what sentence Mims would, in fact, have to serve if he pleaded guilty. Cf. Thompson v. Greene, 265 Ga. 782, 783-784 (1) (462 SE2d 747) (1995) (transcript of plea proceeding showed explicit promise by the prosecuting attorney that the State would consent to a reduction of sentence upon fulfillment of certain conditions, a promise that the State later failed to keep). Moreover, the record reflects nothing about the circumstances in which the assurance allegedly was given. Most important, Mims unequivocally agreed

15

in the end that no one had "ever suggested that [the plea judge is] going to give [Mims] some lighter sentence, easier sentence than the two consecutive life sentences that are possible under the law."

The record of the plea is sufficient to sustain the finding of the plea judge that Mims was not induced to enter his plea by any impermissible or undisclosed promise of leniency. See Smith v. State, 231 Ga. 23, 25-26 (200 SE2d 119) (1973). For that reason, even if Mims had taken a timely appeal to assert the fourth claim of error, it would have proved unsuccessful in light of the existing record. Again, if further factual development might establish a basis for setting aside the plea upon this ground, Mims must develop the facts in a habeas proceeding. See Rhodes, 296 Ga. at 420 (2) (a). Cf. Greene, 265 Ga. at 783-784 (1) (habeas case in which further factual development permitted petitioner to show that he attempted in good faith to fulfill conditions that would, the prosecuting attorney had promised, have led the State to consent to sentence reduction, but State subsequently refused to consent).

(d) Finally, Mims complains generally that the record fails to show that his plea was entered voluntarily, knowingly, and intelligently. See Lejeune, 296 Ga. at 291-292 (1). Yet again, the existing record belies this claim. As we have

16

noted, the record shows that Mims was advised of the essential constitutional protections that he would forfeit by entering a plea of guilty. See Division 2 (a), supra. The record shows that he was represented by counsel, had an opportunity to consult with his counsel, understood the crimes to which he was pleading, and was aware of the sentencing discretion of the court. The transcript of the plea proceeding shows as well that the plea court inquired of Mims about whether his lawyer had explained his "legal and constitutional rights under the law" and had "explained to him the consequences of a guilty plea." The record supports the finding of the plea court that the plea was not induced by any promise of leniency. See Division 2 (c), supra. The transcript establishes that the plea court inquired about Mims's education and literacy. The written plea and acknowledgment-and-waiver-of-rights form further shows that Mims was not under the influence of any drug or intoxicant. Mims testified in the plea colloquy that he understood that no one could force him to plead guilty, that he was entering his plea of his own "free will," and that he did, in fact, wish to enter a plea of guilty. The existing record sustains the finding of the plea court that Mims entered his plea voluntarily, knowingly, and intelligently, and any

17

timely appeal upon this ground would have been without merit.[11] See <u>Carey v. State</u>, 293 Ga. 624 (748 SE2d 891) (2013); <u>Lewis</u>, 293 Ga. at 545-547.

3. To conclude, even if Mims had filed a timely appeal, it would not have been successful. To the extent that his claims can be resolved from the existing record, they would not be resolved favorably to Mims. To the extent that his claims require further factual development, they are not cognizable on direct appeal, whether a timely appeal of right or an out-of-time appeal. For these reasons, no evidentiary hearing was required in this case, and the trial court did not err when it denied the motion for out-of-time appeal.

<u>Judgment affirmed. All the Justices concur.</u>

---

[11] In his briefs to this Court, Mims refers to his "mental retardation," but nothing in the existing record shows any cognitive impairment. Yet again, if additional facts might provide an evidentiary basis for setting aside the plea on the ground of Mims's mental state, Mims must build that factual record in a habeas proceeding. See <u>Rhodes</u>, 296 Ga. at 420 (2) (a); <u>Hagan</u>, 294 Ga. 718 (3) (b).