304 Ga. 875
FINAL COPY

S18A1215. RINGOLD v. THE STATE.

BOGGS, Justice.

In 2012, Richard Terrance Ringold pled guilty to four counts of murder, one count of aggravated assault, and five counts of possession of a firearm during the commission of a felony, arising out of the shooting deaths of four victims and the wounding of a fifth.[1] Ringold was sentenced to concurrent terms of life imprisonment without the possibility of parole for each murder and terms of years on the other convictions. Approximately one month later, he moved to

---

[1] The crimes occurred on August 27, 2009. On November 30, 2012, Ringold filed a pro se motion to withdraw his guilty plea, and his counsel filed a motion to withdraw as the attorneys of record because they would be potential witnesses. The trial court granted counsel's motion to withdraw and appointed Ringold new counsel, who filed an amended motion to withdraw the guilty plea on August 21, 2013. After a hearing, the court denied the motion on November 12, 2013. Ringold did not file a timely notice of appeal. On August 4, 2017, he filed a pro se motion for an out-of-time appeal. On October 19, 2017, the trial court denied that motion without a hearing. On November 6, 2017, Ringold filed a notice of appeal, challenging the order denying his motion for an out-of-time appeal. The case was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

withdraw his plea, and his motion was denied after a hearing. Nearly four years later, he moved to file an out-of-time appeal, which the trial court denied summarily and without holding a hearing. Proceeding pro se, he appeals that denial, asserting that both the trial court and his motion-to-withdraw counsel erred by failing to advise him of his right to appeal the denial of his motion to withdraw his guilty plea. For the reasons stated below, we vacate and remand with direction to the trial court to conduct a hearing on the matter.

According to the indictment to which Ringold pled guilty, Ringold shot and killed four individuals: Atania Butler, Rico Zimmerman, Jhane Thomas, and Lakeisha Parker. Ringold also shot N. A., a seven-year-old, but she survived. During three days of trial, in which the State was seeking the death penalty, the State presented multiple witnesses, including an eyewitness and Ringold's girlfriend, and it planned to call N. A. to testify. Ringold's trial counsel advised him that N. A. was the next and last witness, and there would be no opportunity to plead guilty after her testimony. As the courtroom was being cleared of the press before N. A. took the stand, Ringold decided to plead guilty in exchange for the State's agreement not to seek the death penalty. During the plea colloquy, the State and the trial court asked Ringold a series of questions to

ensure that he was knowingly, voluntarily, and intelligently waiving his rights and pleading guilty. The court accepted Ringold's guilty plea to all of the crimes charged and sentenced him.

Approximately one month later, Ringold timely moved to withdraw his guilty plea, and the trial court held an evidentiary hearing on his motion. At the hearing, at which Ringold was represented by new counsel, Ringold testified that he did not commit the crimes; he lied to the judge during his plea colloquy; and his trial counsel failed to conduct an investigation and hire the experts that he had requested, pressured and coerced him to enter his guilty plea, and advised him to lie to the court so that he could then withdraw his plea.

However, Ringold's trial counsel testified that they did not force, pressure, or coerce Ringold into entering his guilty plea, and the decision to enter the guilty plea was Ringold's. When asked how the decision to plead guilty came about, counsel testified that, at trial, after the next-to-last witness had testified but before N. A. was to testify, Ringold was very disappointed about his girlfriend's testimony because he had assumed that she was going to change her story in his favor, and she did not. He asked to talk to counsel, and counsel advised him that, if he could plead guilty and avoid the death penalty, he should

do it.

At the conclusion of the hearing, the trial court announced that it would deny Ringold's motion to withdraw. The trial court did not mention Ringold's right to appeal on the record. On November 12, 2013, the trial court entered an order denying the motion, which again did not mention Ringold's right to an appeal.

Ringold filed a pro se motion for an out-of-time appeal in 2017, arguing that his motion-to-withdraw counsel was ineffective under the Sixth Amendment to the United States Constitution because counsel was deficient in not advising him of his right to appeal, and that deficient performance prejudiced him because it deprived him of an appeal, where he might have prevailed. On October 19, 2017, the trial court denied Ringold's motion summarily and without holding a hearing.

In his sole enumeration of error, Ringold contends that the trial court and his motion-to-withdraw counsel failed to advise him of his right to appeal the denial of his motion to withdraw his guilty plea. Citing Carter v. Johnson, 278 Ga. 202 (599 SE2d 170) (2004), Ringold claims that he is therefore entitled to an out-of-time appeal. The Attorney General argues that Ringold's claim — that

4

he is entitled to an out-of-time appeal because the trial court failed to inform him of his right to appeal — is not properly before us because Ringold failed to assert it in his motion for an out-of-time appeal. However, as to Ringold's claim that his counsel was ineffective, the Attorney General agrees that Carter applies and that Ringold is entitled to a hearing to determine who bore the ultimate responsibility for the failure to appeal. The District Attorney, on the other hand, argues that Ringold is not entitled to a hearing because he has failed to demonstrate prejudice from the purported ineffective assistance of counsel.

"[I]t is well settled that errors not raised in the trial court will not be heard on appeal." (Citation and punctuation omitted.) Hollins v. State, 287 Ga. 233, 233-234 (695 SE2d 23) (2010). We therefore agree with the Attorney General that Ringold's claim of trial court error has been waived, as Ringold failed to raise it in his motion for an out-of-time appeal.[2]

---

[2] As noted in Presiding Justice Nahmias' concurrence, we recognize that we held in Carter, supra, 278 Ga. at 205 (2), that a defendant's right to a direct appeal from the denial of his motion to withdraw his guilty plea could be frustrated not only by his counsel's ineffectiveness but also by "the failure of the trial court to inform him of his right to appeal." See also Cobb v. State, 284 Ga. 74, 74 (663 SE2d 262) (2008) (following Carter). As the source for this supposed duty of trial courts to inform defendants of their appellate rights, we identified no constitutional provision, statute, or rule. Instead, we relied solely

As to Ringold's claim that his motion-to-withdraw counsel was ineffective, we also agree with the Attorney General that the case should be remanded for a hearing. However, the controlling authority here is <u>Roe v. Flores-Ortega</u>, 528 U. S. 470, 476-477 (II) (A) (120 SCt 1029, 145 LE2d 985)

---

on a quotation from a Court of Appeals case, which said: "[I]n Georgia, an out-of-time appeal is the remedy for a frustrated right of appeal, where 'the appellant was denied his right of appeal through counsel's negligence or ignorance, or if the appellant was not adequately informed of his appeal rights. [Cit.]'" <u>Carter</u>, supra, 278 Ga. at 205 (2) (quoting <u>Murray v. State</u>, 265 Ga. App. 119, 120 (592 SE2d 898) (2004)). As the cases on which <u>Murray</u> relied for this proposition demonstrate, however, its language about not adequately informing the appellant of his appeal rights refers to information coming from *his counsel*, not from the trial court. See <u>Murray</u>, supra, 265 Ga. App. at 120. Specifically, <u>Thorpe v. State</u>, 253 Ga. App. 263, 264 (558 SE2d 804) (2002), involved only an allegation that the defendant's "*trial counsel* never informed him of his right to file a limited direct appeal" from a guilty plea. (Emphasis supplied.) And <u>Syms v. State</u>, 240 Ga. App. 440, 441 (1) (523 SE2d 42) (1999), *rejected* a claim that an out-of-time appeal could be based on the trial court's failure to advise the defendant of his appeal rights, explaining that "[w]e find no case or statutory law imposing upon the superior court a duty to advise a defendant that he may have a right to directly appeal the convictions which result from the entry of his guilty plea." See also <u>Barlow v. State</u>, 282 Ga. 232, 233 (647 SE2d 46) (2007) ("Contrary to Barlow's contention, the trial court was not obligated to inform him of this qualified right [to appeal]. See <u>Syms v. State</u> . . ."). As discussed infra, Georgia courts may excuse compliance with OCGA § 5-6-38, requiring a notice of appeal to be filed within 30 days of an appealable order, "only where necessary to avoid or remedy a constitutional violation concerning the appeal." <u>Gable v. State</u>, 290 Ga. 81, 85 (2) (b) (720 SE2d 170) (2011). Because Ringold did not preserve this issue, however, we need not decide today whether this aspect of <u>Carter</u> and <u>Cobb</u> should be reconsidered.

(2000), not Carter, supra. While this Court has decided many cases dealing with motions for out-of-time appeal, we must follow the instruction of the United States Supreme Court to analyze counsel's effectiveness under the Sixth Amendment, as it is a fundamental principle that this Court is "bound by the Constitution of the United States as its provisions are construed and applied by the Supreme Court of the United States." Coley v. State, 231 Ga. 829, 832 (I) (204 SE2d 612) (1974); see Lejeune v. McLaughlin, 296 Ga. 291, 298 (2) (766 SE2d 803) (2014) ("[E]ven the venerable doctrine of stare decisis does not permit us to persist in an error of *federal* constitutional law." (Emphasis in original.)).

It is now well established that a defendant who timely seeks to withdraw a guilty plea is entitled to the assistance of counsel. Fortson v. State, 272 Ga. 457, 460 (1) (532 SE2d 102) (2000). A defendant also has both the right to appeal the denial of his motion to withdraw guilty plea and the right to the effective assistance of counsel as guaranteed by the Sixth Amendment for that appeal. See OCGA § 5-6-33 (a) (1); Carter, supra, 278 Ga. at 205 (2); Evitts v. Lucey, 469 U. S. 387, 396 (II) (C) (105 SCt 830, 83 LE2d 821) (1985) (stating that "[a] first appeal of right . . . is not adjudicated in accord with due process

7

of law if the appellant does not have the effective assistance of an attorney").

While OCGA § 5-6-38 (a) generally requires that a notice of appeal be filed within 30 days of the appealable decision or judgment complained of, Georgia courts may excuse compliance with that statutory requirement "where necessary to avoid or remedy a constitutional violation concerning the appeal," such as when counsel was ineffective in filing the notice of appeal. Gable v. State, 290 Ga. at 81, 85-86 (2) (b) (720 SE2d 170) (2011). For a defendant who did not receive his first appeal of right because of his counsel's ineffective assistance, the remedy is an out-of-time appeal. Rowland v. State, 264 Ga. 872, 875 (2) (452 SE2d 756) (1995); see Gable, supra, 290 Ga. at 85. This remedy has been judicially created in Georgia. Rowland, supra, 264 Ga. at 875.

A defendant's claim that his counsel was ineffective in failing to file a notice of appeal is reviewed under the familiar standard of Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). Flores-Ortega, supra, 528 U. S. at 476-477 (II). "A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant." (Citations and punctuation omitted.) Id.

To determine whether counsel was constitutionally ineffective for failing to file a timely notice of appeal, the first question that must be answered is whether counsel "consulted" with the defendant about an appeal — that is, whether counsel "advis[ed] the defendant about the advantages and disadvantages of taking an appeal, and ma[de] a reasonable effort to discover the defendant's wishes." Flores-Ortega, supra, 528 U. S. at 478 (II) (A). If counsel adequately consulted with the defendant, counsel performed deficiently only if he failed "to follow the defendant's express instructions with respect to an appeal." Id.

However, if counsel did not consult with the defendant, "the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitute[d] deficient performance." Flores-Ortega, supra, 528 U. S. at 478 (II) (A)

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Id. at 480 (II) (A). To make that determination, the trial court "must take into

account all the information counsel knew or should have known." Id. For example,

> a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

Id. We recognize that the trial court's considerations may be slightly different in Ringold's case than those advised by the United States Supreme Court in Flores-Ortega because the two cases differ procedurally. Flores-Ortega involved the failure to pursue an appeal following a conviction by guilty plea, whereas here Ringold complains that he did not get an appeal from the denial of his motion to withdraw his guilty plea. Nevertheless, the point remains the same. "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." Id.

As noted in Flores-Ortega, there are circumstances in which counsel's

failure to consult will not amount to deficient performance:

> For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information. We therefore reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.

(Citation omitted.) Id. at 479-480 (II) (A). However, like the United States Supreme Court, "[w]e expect that courts evaluating the reasonableness of counsel's performance using the [test set forth in Flores-Ortega] will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." Id. at 481 (II) (A).

The second component of the Strickland test requires that the defendant show prejudice from his counsel's performance. In this context, to show prejudice, "a defendant must demonstrate that there is a reasonable probability

11

that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, supra, 528 U. S. at 484 (II) (B) (3). The United States Supreme Court has squarely rejected the argument that the defendant must show that he would have actually prevailed in a timely appeal, as well as "any requirement that the would-be appellant specify the points he would raise were his right to appeal reinstated," as "it is unfair to require an indigent, perhaps pro se, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal." (Citations, punctuation and emphasis omitted.) Id. at 485-486 (II) (B) (3). Instead, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken," the defendant is entitled to an appeal because he effectively has been deprived of an appellate proceeding altogether. Id. at 483-484 (II) (B) (2) and (3).[3]

---

[3] As explained further in Presiding Justice Nahmias' concurrence, the proper prejudice analysis, as laid out in Flores-Ortega, supra, 528 U. S. at 484-486 (II) (B) (3), is inconsistent with the actual-prejudice requirement we have imposed, without mention of Flores-Ortega, in many prior cases dealing with motions for out-of-time appeals from guilty plea convictions. See, e.g., Stephens v. State, 291 Ga. 837 (733 SE2d 266) (2012). In Stephens, we explained that,

12

Here, Ringold claims that he is entitled to an out-of-time appeal because his counsel was ineffective in not informing him of his right to a direct appeal from the denial of his motion to withdraw his guilty plea. However, because the trial court denied Ringold's motion for an out-of-time appeal without holding an evidentiary hearing, we cannot determine from the existing record whether Ringold's counsel performed deficiently in failing to file a notice of appeal.

Therefore, we vacate the trial court's order denying Ringold's motion for an out-of-time appeal and remand this case for the trial court to determine whether Ringold's motion-to-withdraw counsel was ineffective in failing to file a timely notice of appeal, consistent with the test in Flores-Ortega. If Ringold

_____

when a defendant seeks an out-of-time appeal from a guilty plea on the ground that his counsel was ineffective in not filing a timely appeal, he must "prove both 'that his trial counsel provided deficient performance and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different,' *which means in this context that the appeal would have been successful*." (Citation omitted; emphasis supplied.) Id. at 838-839 (2). We then considered only the issues the pro se defendant "raised in his motion for out-of-time appeal and ha[d] pursued [on the] appeal." Id. at 839 (3). The case before us, however, concerns a motion for an out-of-time appeal from the denial of a motion to withdraw guilty plea, and in that context, we have not required a showing of actual prejudice, albeit again without reference to Flores-Ortega. See Cobb, supra, 284 Ga. at 74; Carter, supra, 278 Ga. at 205.

13

shows that his counsel was deficient in failing to file a timely notice of appeal and that, but for counsel's deficiency, he would have appealed, he is entitled to an out-of-time appeal.

Judgment vacated and case remanded with direction. All the Justices concur.

NAHMIAS, Presiding Justice, concurring.

I join the Court's opinion in full, but write separately to explain that not until this case did I realize how badly off-track our case law on out-of-time appeals has ventured. It is unnecessary to overrule any of that precedent to decide this case given its particular context, but the Court's opinion sounds a clear death knell for two sets of our prior holdings, and a third set of our holdings should also be promptly jettisoned. I have authored a number of cases

invoking these erroneous holdings and have joined many more opinions relying on them, but "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late." Henslee v. United Planters Nat. Bank & Trust Co., 335 U. S. 595, 600 (69 SCt 290, 93 LE 259) (1949) (Frankfurter, J., dissenting).

1.      First, as the Court's opinion explains in footnote 2, our holdings in Carter v. Johnson, 278 Ga. 202, 205 (599 SE2d 170) (2004), and Cobb v. State, 284 Ga. 74, 74 (663 SE2d 262) (2008), that trial courts have a duty to inform criminal defendants of their rights to appeal and thus defendants are entitled to an out-of-time appeal if not so advised, rest on Carter's misreading of the Court of Appeals' case it quoted, find no support elsewhere in the law, and indeed contradicts cases like Barlow v. State, 282 Ga. 232, 233 (647 SE2d 46) (2007). We can correct this aspect of Carter and Cobb someday, but it is of limited import — we have not mentioned the holding in the decade since Cobb — perhaps because trial courts often gratuitously advise defendants of their appeal rights and because most out-of-time appeals are properly focused on the shortcomings of counsel rather than the court.

2.      The much more significant consequence of the Court's opinion, as suggested in footnote 3, will follow from our belated acknowledgment that the analysis of Sixth Amendment ineffective assistance of counsel claims involving the failure to file a timely appeal from a criminal conviction is controlled by the United States Supreme Court's decision in Roe v. Flores-Ortega, 528 U. S. 470 (120 SCt 1029, 145 LE2d 985) (2000).  In the nearly two decades since that case was decided, Georgia appellate courts have cited the pertinent parts of Flores-Ortega only once in the out-of-time-appeal context, in White v. State, 277 Ga. 647 (594 SE2d 329) (2004).  (By contrast, the Eleventh Circuit has dozens of cases applying Flores-Ortega.)  In White, we recognized in the context of a motion for out-of-time appeal from a conviction *after trial* that to obtain an appeal, the defendant "need only show that the procedural deficiency [in not filing a timely appeal] was due to counsel's failure to perform his duties," and he does *not* need "'to demonstrate that his hypothetical appeal might have had merit.'"  Id. at 648 (quoting Flores-Ortega, 528 U. S. at 486).

Although Flores-Ortega itself involved a defendant whose conviction was by guilty plea, see 528 U. S. at 473, we ignored the case in that context until our attention was drawn to it by the brief of a pro se appellant — Ringold.  The

3

United States Supreme Court has authoritatively held that the usual actual-prejudice standard for ineffective assistance claims (which requires the defendant to show that his counsel's deficiency had a reasonable probability of affecting the outcome of the proceeding) is *not* applicable in this context (because if counsel was deficient in filing a timely appeal, the defendant was deprived of his appellate proceeding *entirely*). See id. at 481-486. Yet this Court and the Court of Appeals have in hundreds of cases required defendants whose convictions came by guilty pleas to show that they could actually prevail in an appeal before allowing them that appeal out-of-time. We were wrong to do so, and we should overrule those erroneous holdings and come into compliance with Flores-Ortega at the first available opportunity.

3. The final set of holdings that this case has caused me to understand are unsupportable — holdings that do not require discussion in the Court's opinion but that seem to lie at the root of much of the confusion in this area — began with this Court's divided opinion in Morrow v. State, 266 Ga. 3 (463 SE2d 472) (1995). There the majority held that "an appeal will lie from a judgment entered on a guilty plea only if the issue on appeal can be resolved by facts appearing in the record." Id. For this proposition, the majority cited only

4

Smith v. State, 253 Ga. 169 (316 SE2d 757) (1984). Smith held that "[w]here the question on appeal is one which may be resolved by facts appearing in the record, . . . a direct appeal will lie," id. at 169, but Smith did *not* hold that a defendant who pleads guilty is authorized to appeal *only* in that situation. Morrow was followed by Caine v. State, 266 Ga. 421 (467 SE2d 570) (1996), another divided opinion where the majority held that "the merits of Caine's appeal can be addressed if, and only if, the questions that he seeks to raise on appeal may be resolved by facts appearing in the record," and after reviewing his claims and determining that he could not prevail on the existing record, *dismissed* his appeal rather than simply affirming the judgment. Id. at 421-422.

Soon thereafter came Smith v. State, 266 Ga. 687 (470 SE2d 436) (1996), a third divided opinion where the majority, citing Morrow and Caine, held that "[a] criminal defendant has no unqualified right to *file* a direct appeal from a judgment of conviction and sentence entered on a guilty plea." Smith, 266 Ga. at 687 (emphasis supplied). This notion that a defendant who pleads guilty is "entitled" to an appeal only if the issues he seeks to raise can be resolved in his favor based on the existing record has become baked into our out-of-time-appeal case law, see, e.g., Houston v. State, 302 Ga. 35, 37 (805 SE2d 34) (2017);

5

Mims v. State, 299 Ga. 578, 580 (787 SE2d 237) (2016) — with an awkward exception for defendants who plead guilty but appeal only after having a motion to withdraw the guilty plea denied, see Carter, 278 Ga. at 204.

Having now reflected upon it, I see that this notion is entirely unsound. The General Assembly has provided in plain language that criminal defendants may appeal their judgments of conviction and sentence (or a subsequent final judgment entered after a motion for new trial, motion to withdraw plea, etc.) without any distinction as to whether the judgment results from a guilty plea or a verdict after trial. See OCGA § 5-6-33 (a) (1) ("[T]he defendant in any criminal proceeding in the superior, state, or city courts may appeal from any sentence, judgment, decision, or decree of the court, or of the judge thereof in any matter heard at chambers."). See also OCGA § 5-6-34 (a) ("Appeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts, the constitutional city courts, and such other courts or tribunals from which appeals are authorized by the Constitution and laws of this state: (1) All final judgments, that is to say, where the case is no longer pending in the court below, except as provided in Code Section 5-6-35 . . . ."). The dissents in Morrow, Caine, and Smith pointed out

6

this undifferentiated statutory right to appeal, each time with no response by the majority opinion.

The fact that a defendant who pleads guilty has a *right* to appeal does not mean, of course, that he *wins* the appeal. He must be able to show reversible error, and he must do so on the existing record. This is a fundamental principle of appellate practice that applies to all appellants, civil and criminal, whatever proceedings (pleadings, motions, hearings, trials, or combinations thereof) may have led to the appealable judgment. See, e.g., Tolbert v. Toole, 296 Ga. 357, 363 (767 SE2d 24) (2014) ("It is [the appellant's] burden, as the party challenging the ruling below, to affirmatively show error from the record on appeal."); Dept. of Human Resources v. Allison, 276 Ga. 175, 178 (575 SE2d 876) (2003) ("[T]he burden is on the appellant to show error by the record . . . ." (citation and punctuation omitted)); Branch v. Branch, 194 Ga. 575, 575 (22 SE2d 124) (1942) ("One who assigns error must show error by the record."). See also Caine, 266 Ga. at 423 (Benham, C.J., dissenting) (recognizing that our holding in the 1984 Smith case was simply "a restatement of the judicial maxim that an appellate court is required to decide cases on the facts contained in the record").

The larger the record, the greater the opportunity to show error on the record, so it is generally harder to *successfully* appeal from a guilty plea (where the record is usually limited to the indictment, plea hearing transcript, plea forms, and judgment) than from the denial of a motion to withdraw a guilty plea (where the record may be supplemented with an evidentiary hearing) than from a trial (with a full record) than from the denial of a motion for new trial (where the record may again be supplemented). We have discussed this practical reality before:

> While a defendant does not waive consideration of merger issues by pleading guilty, his guilty plea does waive the expansion of the factual record that occurs with a trial. The practical effect of that waiver will usually mean that he cannot establish (and the court cannot discern) that any of his convictions merged, particularly as a matter of fact, based on the limited record. In this respect, merger claims in guilty plea cases are like other claims that a defendant who pleads guilty may try to raise but rarely will be able to establish based on the limited record.

Nazario v. State, 293 Ga. 480, 488-489 (746 SE2d 109) (2013) (emphasis omitted).

If an appellant cannot sustain his enumerations of error based on the existing record, the appellate court normally just affirms the trial court judgment. See, e.g., Tolbert, 296 Ga. at 363; Allison, 276 Ga. at 178-179;

8

Branch, 194 Ga. at 578. As best I can tell, nowhere else in Georgia appellate law have we taken the peculiar approach we took in Caine, examining the record to see if the appellant could prevail on the merits of his appeal and, if not, holding that he could not appeal in the first instance. See Caine, 266 Ga. at 422 ("The issues which Caine raises cannot be resolved only by facts appearing in the existing record. Accordingly, he was not entitled to file a notice of direct appeal and his appeal must, therefore, be dismissed.").

Our holdings in Morrow and its many progeny also run afoul of the prejudice analysis prescribed in Flores-Ortega. Our cases say that defendants who plead guilty are not entitled to an out-of-time appeal unless they can show that their claims would prevail in the appeal they seek, see, e.g., Mims, 299 Ga. at 580-581, but the United States Supreme Court has squarely held that the prejudice resulting from the failure to file a timely appeal by counsel who represented a defendant convicted by guilty plea is *not* to be determined based on whether the defendant would have prevailed in a timely appeal. See Flores-Ortega, 528 U.S. at 483-486. Accordingly, we should promptly overrule the Morrow-based set of holdings as well, and restore appeals from convictions based on guilty pleas to the normal law of appellate practice.

4.      What will be the practical effects of overruling Morrow and its followers and complying with Flores-Ortega? Trial courts will grant more motions for out-of-time appeal, particularly in guilty plea cases, where the motions can no longer be denied on the ground that the defendant cannot show on the existing record that his claims will prevail on appeal, as well as in cases where defense lawyers failed to consult with their clients about filing a timely appeal or consulted but then failed to abide by the defendant's request to file an appeal. These cases will still come to the appellate courts, but more will come as granted out-of-time appeals, with the defendants represented by counsel, rather than as pro se appeals from the denial of a motion for an out-of-time appeal. The defendants thus will have the benefit of counsel to "review[ ] the record in [their] case[s] in search of potentially meritorious grounds for appeal," Flores-Ortega, 528 U. S. at 486, although their lawyers will still be required to show reversible error on the existing record, meaning that it will still be difficult to prevail on appeals from guilty pleas. And if we decide that defendants who appeal directly from guilty plea convictions cannot prevail, we will affirm their convictions rather than dismiss their appeals under Caine. These will be

significant changes in how appeals from criminal convictions are adjudicated in Georgia, but none of them will be earth-shattering.

This case does not require us to make those changes, as this is not an appeal directly from a guilty plea conviction and the Court properly applies Flores-Ortega rather than Morrow and its ilk. Cases directly implicating those precedents will come before us soon, however, and it is clear what we must do then.

Decided January 22, 2019.

Murder. Gwinnett Superior Court. Before Judge Beyers.

Richard T. Ringold, pro se.

Daniel J. Porter, District Attorney, Lee F. Tittsworth, Samantha Routh, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.