307 Ga. 363
FINAL COPY

S19A0658.  COLLIER v. THE STATE.

ELLINGTON, Justice.

The Superior Court of Macon County denied, without a hearing, Cordalero Collier's motion for an out-of-time appeal from the judgment of conviction entered on his guilty plea. Collier contends the trial court erred in denying his motion without considering whether his plea counsel's alleged ineffective assistance deprived him of his right to an appeal. For the following reasons, we vacate the trial court's order and remand this case.

The facts relevant to this appeal are as follows. A Macon County grand jury indicted Collier in November 2008 for a number of offenses, including murder. On September 9, 2009, with the assistance of counsel, Collier entered a negotiated guilty plea to felony murder, and the trial court entered an order of nolle prosequi on the remaining counts. Following the plea hearing, the court sentenced Collier to serve life in prison. On October 1, 2018, Collier

filed a pro se motion for an out-of-time appeal, contending, inter alia, that his plea counsel was ineffective for failing to inform him of his right to an appeal. Collier contended in his motion for out-of-time appeal that, immediately after the superior court sentenced him and explained his right to appeal, he "informed his counsel that he wanted to withdraw his plea and file an appeal of his conviction." The trial court, after reviewing "the record and applicable law," summarily denied Collier's motion on December 20, 2018.

In his pro se appellate brief, Collier argued that the trial court erred in denying his motion for an out-of-time appeal without conducting a hearing. On March 18, 2019, after appointing pro bono appellate counsel for Collier, this Court ordered the parties to file supplemental briefs addressing whether the following authority is pertinent to the resolution of this appeal: *Garza v. Idaho*, ___ U. S. ___ (139 SCt 738, 203 LE2d 77) (2019); *Roe v. Flores-Ortega*, 528 U. S. 470 (120 SCt 1029, 145 LE2d 985) (2000); and *Ringold v. State*, 304 Ga. 875 (823 SE2d 342) (2019). After the parties filed their supplemental briefs, this Court heard oral arguments.

Collier contends that the trial court abused its discretion in denying his motion for an out-of-time appeal from the judgment of conviction entered on his guilty plea without conducting a hearing and inquiring into whether his counsel's alleged ineffective assistance deprived him of his appeal of right. Both Collier and the State agree that, before this Court addresses this claim of error, we must evaluate whether the body of relevant Georgia case law remains viable in light of the cases that we asked them to address in their briefs. Indeed, we asked them to address those cases because, as we stated in *Ringold*, supra, Georgia's case law concerning out-of-time appeals is in need of correction. We were not required to overrule that precedent in *Ringold*; this case, however, requires that we reexamine, disapprove, and overrule a significant body of our case law concerning out-of-time appeals and appeals from judgments of conviction entered on guilty pleas. We acknowledge that our decision today is a departure from established Georgia post-conviction criminal procedure in important respects.

We start by examining the substantive test that a trial court

3

must apply in determining whether a criminal defendant is entitled to an out-of-time appeal from a final judgment of conviction, and we evaluate how that test applies to the subset of cases where the defendant seeks an out-of-time appeal from a judgment of conviction entered on a guilty plea. Thereafter, we consider the appropriate procedural vehicle for requesting an out-of-time appeal and whether the State may raise a "prejudicial delay" defense to a motion for an out-of-time appeal. Finally, we consider the application of the law to the facts in Collier's case, which requires us to remand the case to the trial court.

1. A criminal defendant is entitled to an out-of-time appeal if his counsel's constitutionally deficient performance deprived him of an appeal of right that he otherwise would have pursued. As this Court has explained,

> before being entitled to an out-of-time appeal, a defendant must allege and prove an excuse of constitutional magnitude for failing to file a timely direct appeal, which usually is done by showing that the delay was caused by his trial counsel's ineffective assistance in providing advice about or acting upon an appeal.

(Citation and punctuation omitted.) *Bailey v. State*, 306 Ga. 364, 365

4

(828 SE2d 300) (2019). A defendant who does not allege and prove such an excuse for failing to file a timely direct appeal is not entitled to an out-of-time appeal. Id. If the constitutional violation alleged by the defendant is ineffective assistance of counsel in providing advice about or acting upon an appeal of right, that violation "is reviewed under the familiar standard of *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)." *Ringold*, 304 Ga. at 879. To meet his burden of proving that counsel's ineffectiveness deprived him of his right to an appeal, the criminal defendant must show "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant." (Citations and punctuation omitted.) Id.

With respect to the first component of the *Strickland* standard, the defendant must show that his appeal of right was lost as a consequence of his counsel's deficient performance, and the trial

court must make a factual inquiry into those allegations. Id.[1] With respect to the second component of the *Strickland* standard, the defendant is required to demonstrate only that there is a reasonable probability that, but for counsel's deficient performance, "he would have timely appealed." (Citation and punctuation omitted.) Id. at 881.

> The United States Supreme Court has squarely rejected the argument that the defendant must show that he would have actually prevailed in a timely appeal, as well as "any requirement that the would-be appellant specify the points he would raise were his right to appeal reinstated," as "it is unfair to require an indigent, perhaps pro se, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal." (Citations, punctuation and emphasis omitted.) [*Flores-Ortega*, 528 U. S.] at 485-486 (II) (B) (3). Instead, "when counsel's constitutionally deficient performance deprives a defendant of an appeal

---

[1] When a defendant alleges he was deprived of his appeal of right due to trial counsel's ineffective assistance, the court must determine whether counsel was responsible for the failure to pursue a timely appeal. "A trial court abuses its discretion when it fails to make such a factual inquiry." *Simmons v. State*, 276 Ga. 525, 526-527 (579 SE2d 735) (2003). See also *Edwards v. State*, 263 Ga. App. 106, 108 (587 SE2d 258) (2003) (same). For a discussion of the relevant factors that a trial court should consider in determining whether counsel properly consulted with and advised a defendant about his appellate rights and whether counsel followed the defendant's instructions, if any, concerning the filing of a notice of appeal, see *Ringold*, 304 Ga. at 879-881, and *Flores-Ortega*, 528 U. S. at 478-481 (II) (A).

that he otherwise would have taken," the defendant is entitled to an appeal because he effectively has been deprived of an appellate proceeding altogether. Id. at 483-484 (II) (B) (2) and (3).

*Ringold*, 304 Ga. at 881.

This standard applies whether a defendant seeks an out-of-time appeal from a final judgment of conviction entered following a trial or following a guilty plea. See *Flores-Ortega*, 528 U. S. at 476-477 (II) ("Today we hold that this test applies to claims, like respondent's, that counsel was constitutionally ineffective for failing to file a notice of appeal [following the entry of his guilty plea]."). See also *Garza*, 139 SCt at 747 (II) (D) ("[W]e reaffirm that, when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal, with no need for a further showing of his claims' merit, regardless of whether the defendant has signed an appeal waiver [that was included in his guilty plea agreement]." (citation and punctuation omitted)); *White v. State*, 277 Ga. 647, 648 (594 SE2d 329) (2004) (To obtain an out-of-time appeal from a

judgment entered following a trial, the defendant need only show that the procedural deficiency in not filing a timely appeal was due to counsel's failure to perform his duties, and he does not need "'to demonstrate that his hypothetical appeal might have had merit.'" (citing *Flores-Ortega*, 528 U. S. at 486 (II) (B) (3)). In short, "[w]hen counsel's deficient performance forfeits an appeal that a defendant otherwise would have taken, the defendant gets a new opportunity to appeal." *Garza*, 139 SCt at 749 (III).

Unfortunately, we have long erroneously held that a defendant seeking an out-of-time appeal directly from a judgment entered on a guilty plea must satisfy the prejudice component of the *Strickland* standard by showing that his appeal would have had merit. See *Ringold*, 304 Ga. at 881 n.3. We have also held that, if the defendant cannot show that his appeal would have had merit, the trial court may forgo an inquiry into whether counsel's performance with respect to the appeal was constitutionally deficient. For example, in *Stephens v. State*, this Court held that,

> in deciding a motion for out-of-time appeal, the trial court must hold an evidentiary hearing to determine whether

8

> defense counsel's unprofessional conduct was the cause of the untimeliness only where the motion raises an issue that would have been meritorious on the existing record had a timely appeal been taken.

(Citations omitted.) 291 Ga. 837, 839 (2) (733 SE2d 266) (2012).

Because the holding in *Stephens* conflicts with controlling United States Supreme Court precedent, it and other opinions with similar holdings from this Court and the Court of Appeals are overruled.[2]

We also overrule a peculiar line of cases where we have held that a criminal defendant's right to appeal directly from a judgment entered on a guilty plea is qualified in scope; that is, the right to appeal is limited to those cases in which the issue on appeal can be "resolved by facts appearing in the record." That line of cases has its

---

[2] We have not addressed whether considerations of stare decisis weigh against overruling this line of cases because we are modifying the out-of-time appeal remedy only as it pertains to the test for determining whether a defendant's desire to pursue his appeal of right was frustrated by a violation of *constitutional* magnitude, specifically, a violation of a defendant's Sixth Amendment right to counsel. This Court is "bound by the Constitution of the United States as its provisions are construed and applied by the Supreme Court of the United States," *Coley v. State*, 231 Ga. 829, 832 (I) (204 SE2d 612) (1974), so "even the venerable doctrine of stare decisis does not permit us to persist in an error of *federal* constitutional law." (Citation omitted; emphasis in original.) *Lejeune v. McLaughlin*, 296 Ga. 291, 298 (2) (766 SE2d 803) (2014). See the Appendix for a list of cases overruled in whole or in part by this opinion.

genesis in *Morrow v. State*, 266 Ga. 3, 3-4 (463 SE2d 472) (1995) (affirming the denial of a defendant's motion for an out-of-time appeal from his conviction entered on a guilty plea). In *Morrow*, a bare majority of this Court held that "an appeal will lie from a judgment entered on a guilty plea *only* if the issue on appeal can be resolved by facts appearing in the record." (Citation omitted; emphasis supplied.) Id. The holding in *Morrow* is dubious, given the unequivocal statutory language to the contrary.[3] Nevertheless, it

---

[3] Pursuant to OCGA § 5-6-33 (a) (1), a criminal defendant "may appeal from any sentence, judgment, decision, or decree of the court, or of the judge thereof in any matter heard at chambers." A version of this Code section has been a part of Georgia statutory law since at least 1863. See *Cawthon v. State*, 119 Ga. 395, 403 (1), (2) (46 SE 897) (1904) ("Either party in a civil cause, and the defendant in any criminal proceeding in the superior courts of this state, may except to any sentence, judgment, decision, or decree of such court, or of the judge thereof in any matter heard at chambers. Such bill of exceptions shall specify plainly the decision complained of, and the alleged error, and shall be signed by the party, or his attorney or solicitor. Code 1863, § 4160." (punctuation omitted)). Nothing in OCGA § 5-6-33 (a) (1) makes any distinction between judgments entered on a guilty plea or on a verdict after trial. Likewise, OCGA § 5-6-34 (a) provides:

> Appeals may be taken to the Supreme Court and the Court of Appeals from the following judgments and rulings of the superior courts, the Georgia State-wide Business Court, constitutional city courts, and such other courts or tribunals from which appeals are authorized by the Constitution and laws of this state: (1) All final judgments, that is to say, where the case is no longer pending in the court below, except as provided in Code

10

became entrenched in our precedent concerning out-of-time appeals.[4] It even created some confusion concerning the case law pertaining to motions for an out-of-time appeal from a judgment of conviction entered *after trial*.[5]

Over the years, several Justices of this Court expressed the belief that the "facts appearing in the record" language from *Morrow* was "nothing more than a restatement of the judicial maxim that an appellate court is required to decide cases on the facts contained in the record." (Citation omitted.) *Caine v. State*, 266 Ga. 421, 423 (467 SE2d 570) (1996) (Benham, C. J., dissenting, joined by Presiding

---

Section 5-6-35[.]
Again, judgments on guilty pleas are not excepted.

[4] See, e.g., *Brown v. State*, 290 Ga. 321 (1) (720 SE2d 617) (2012) ("It is well established that a criminal defendant has no unqualified right to file a direct appeal from a judgment of conviction and sentence entered on a guilty plea, and an appeal will lie from a judgment entered on a guilty plea only if the issue on appeal can be resolved by facts appearing in the record." (citations and punctuation omitted)).

[5] For example, in *White*, this Court issued a writ of certiorari to the Court of Appeals and posed this question: "Must a criminal defendant seeking an out-of-time appeal after being found guilty by a jury set forth the errors he would raise on appeal in addition to establishing that the loss of his right to a direct appeal was due to an attorney's inadequate performance?" In answering that question, however, we reiterated that, because "a defendant does have an absolute right to file a direct appeal from a conviction entered after a jury or bench trial[,]" he was not required to "point to the record and set out the issues he would raise on appeal." (Citations omitted.) 277 Ga. at 648.

11

Justice Fletcher and Justice Sears). Recently, Presiding Justice

Nahmias explained in his concurrence in *Ringold* that

> [t]he fact that a defendant who pleads guilty has a *right* to appeal does not mean, of course, that he *wins* the appeal. He must be able to show reversible error, and he must do so on the existing record. This is a fundamental principle of appellate practice that applies to all appellants, civil and criminal, whatever proceedings (pleadings, motions, hearings, trials, or combinations thereof) may have led to the appealable judgment.

(Citations omitted; emphasis in original.) 304 Ga. at 885. The

conflation of these concepts — whether a defendant has the right to

appeal directly from a judgment of conviction entered on a guilty

plea and whether the record shows that the defendant would be

successful on the merits — appears to be the source of the analytical

error in *Morrow*.

Whether *Morrow* was wrongly decided under Georgia law,

however, is largely a moot point, because it rests on a foundation

that is inconsistent with the holdings in *Flores-Ortega* and *Garza*.

In *Flores-Ortega*, the United States Supreme Court explained that

prejudice must be presumed "when counsel's constitutionally

deficient performance deprives a defendant of an appeal that he

otherwise would have taken[.]" 528 U. S. at 484 (II) (B) (3). Because prejudice is presumed, a criminal defendant cannot be required to identify the meritorious issue he would have raised (on the existing record or otherwise) in a hypothetical appeal in order to establish that his counsel's deficient performance prejudiced him. That presumption holds even if the scope of the defendant's right to an appeal has been narrowed or limited, as under *Morrow*. As the Supreme Court explained in *Garza*, where the defendant retains a "*right* to a proceeding, and he was denied that proceeding altogether as a result of counsel's deficient performance[,]" the rationale of *Flores-Ortega* still applies. 139 SCt at 747 (II) (D). In other words, "when deficient counsel causes the loss of an entire proceeding, it will not bend the presumption-of-prejudice rule simply because a particular defendant seems to have had poor prospects." Id. See also *Ringold*, 304 Ga. at 886 (3) (Nahmias, P. J., concurring) ("[T]he United States Supreme Court has squarely held that the prejudice resulting from the failure to file a timely appeal by counsel who represented a defendant convicted by guilty plea is not to be

13

determined based on whether the defendant would have prevailed in a timely appeal." (citation omitted)).

Recognizing that, under controlling Sixth Amendment principles, a defendant is entitled to the effective assistance of counsel to bring an appeal from the judgment of conviction entered on his guilty plea, whatever the supposed scope of the right to appeal, we must also recognize that a foundational aspect of *Morrow*'s holding with respect to out-of-time appeals is eliminated. And without that foundation, there is nothing to sustain the case and its progeny. We therefore overrule *Morrow*.[6]

---

[6] We note that overruling *Morrow* will result in a more manageable framework for considering appeals from guilty pleas, one that is more streamlined as well as consistent with state and federal law. Consider, for example, that prior to this opinion, a criminal defendant who filed an appeal *directly* from a conviction entered on a guilty plea had limited appellate rights under *Morrow,* whereas a defendant who timely filed a motion to withdraw a guilty plea and *then* appealed from the ruling thereon did not face the same limitation, see *Ringold*, 304 Ga. at 878-879, even though both types of appeals followed convictions on guilty pleas. Following our decision today, if a defendant who appeals directly from a guilty plea cannot prevail on the merits, we will simply affirm the conviction, rather than dismiss the appeal. This opinion therefore ends the peculiar practice of an appellate court in timely appeals brought directly from a conviction entered on a guilty plea examining the record to see if the appellant could prevail on the merits of his appeal and, if not, holding that he was not entitled to appeal in the first instance. See *Caine*, 266 Ga. at 422 ("The issues which Caine raises cannot be resolved only

14

2. The District Attorney, but not the Attorney General, asks this Court to reconsider the procedure we have long allowed by which a defendant may seek an out-of-time appeal not only in a habeas petition but in a motion filed in the trial court. He asks that we abolish the practice of allowing defendants to file a motion for an out-of-time appeal in the trial court. The primary reason the District Attorney gives for making such a significant change is that defendants who seek out-of-time appeals in trial courts may do so long after their convictions, thereby circumventing the limitation provision, OCGA § 9-14-42 (c), and the prejudicial delay provision, OCGA § 9-14-48 (e), imposed on habeas petitioners since 2004.[7] See

_____

by facts appearing in the existing record. Accordingly, he was not entitled to file a notice of direct appeal and his appeal must, therefore, be dismissed."). See also *Ringold*, 304 Ga. at 885-886 (3) (Nahmias, P. J., concurring) (criticizing the holding in *Caine* as being inconsistent with general Georgia appellate law).

[7] OCGA § 9-14-42 (c) provides:

Any action brought pursuant to [Title 9, Chapter 14, Article 2] shall be filed within one year in the case of a misdemeanor, except as otherwise provided in Code Section 40-13-33, or within four years in the case of a felony, other than one challenging a conviction for which a death sentence has been imposed or challenging a sentence of death, from:

(1) The judgment of conviction becoming final by the conclusion of direct review or the expiration of the time for

Ga. Laws 2004, p. 917, § 1. Making such a substantial change to the

out-of-time appeal procedure would require us to consider the larger

> seeking such review; provided, however, that any person whose conviction has become final as of July 1, 2004, regardless of the date of conviction, shall have until July 1, 2005, in the case of a misdemeanor or until July 1, 2008, in the case of a felony to bring an action pursuant to this Code section;
>
> (2) The date on which an impediment to filing a petition which was created by state action in violation of the Constitution or laws of the United States or of this state is removed, if the petitioner was prevented from filing such state action;
>
> (3) The date on which the right asserted was initially recognized by the Supreme Court of the United States or the Supreme Court of Georgia, if that right was newly recognized by said courts and made retroactively applicable to cases on collateral review; or
>
> (4) The date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence.

OCGA § 9-14-48 (e) provides:

> A petition, other than one challenging a conviction for which a death sentence has been imposed or challenging a sentence of death, may be dismissed if there is a particularized showing that the respondent has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows by a preponderance of the evidence that it is based on grounds of which he or she could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the respondent occurred. This subsection shall apply only to convictions had before July 1, 2004.

Prior to the enactment of this provision, there was no comparable "prejudicial delay" or "laches" defense applied in habeas cases in Georgia courts. See *Zant v. Cook*, 259 Ga. 299, 300 (379 SE2d 780) (1989) ("[T]his court has not applied the doctrine of laches to habeas corpus cases.").

issues of how the out-of-time appeal remedy should be categorized (e.g., as an equitable or an extraordinary remedy) and whether that remedy should be available only in a petition for a writ of habeas corpus. Although we decline to address these larger issues at this time, we can resolve the District Attorney's concern about long-delayed out-of-time appeal motions brought in the trial court. For the reasons that follow, we hold that the State may raise the defense of "prejudicial delay" to out-of-time appeal motions filed in the trial court.

Fundamentally, a granted out-of-time appeal excuses a criminal defendant's prior failure to timely file a notice of appeal. To perfect the right to bring an appeal, a criminal defendant normally must file a notice of appeal from the judgment of conviction within 30 days after its entry. OCGA § 5-6-38 (a).[8] Compliance with this

---

[8] OCGA § 5-6-38 (a) provides, in relevant part:
A notice of appeal shall be filed within 30 days after entry of the appealable decision or judgment complained of; but when a motion for new trial, a motion in arrest of judgment, or a motion for judgment notwithstanding the verdict has been filed, the notice shall be filed within 30 days after the entry of the order granting, overruling, or otherwise finally disposing of the motion. . . .

17

statutory deadline for filing a notice of appeal is an "absolute requirement" to confer jurisdiction on an appellate court. (Citation, punctuation and emphasis omitted.) *Cody v. State*, 277 Ga. 553, 553 (592 SE2d 419) (2004). See also *Gable v. State*, 290 Ga. 81, 85 (2) (b) (720 SE2d 170) (2011) ("[C]ourts have no authority to create equitable exceptions to jurisdictional requirements imposed by statute." (citation and punctuation omitted)). However, when a criminal defendant demonstrates that his appeal of right has been frustrated by a violation of constitutional magnitude, the failure to file a timely notice of appeal may be excused and the constitutional violation remedied by the provision of an out-of-time appeal. *Gable*, 290 Ga. at 85 (2) (b). This out-of-time appeal remedy has existed in Georgia for decades.

Half a century ago, the United States Supreme Court held that when constitutionally deficient counsel deprives a defendant of an appeal of right, the entry of a new judgment for the purpose of

---

See also OCGA § 5-6-39 (providing for limited extensions of time to file a notice of appeal).

permitting the perfection of an appeal was an appropriate remedy. See *Rodriquez v. United States*, 395 U. S. 327, 332 (89 SCt 1715, 23 LE2d 340) (1969) (remanding the case "to the District Court where petitioner should be resentenced so that he may perfect an appeal in the manner prescribed by the applicable rules"). A few years after *Rodriquez*, the "out-of-time appeal" remedy began to appear in Georgia's habeas corpus jurisprudence.[9] See, e.g., *Roberts v. Caldwell*, 230 Ga. 223, 224 (196 SE2d 444) (1973) (reversing the decision of the habeas court, which denied the inmate's petition for a writ of habeas corpus, and remanding the case with direction to enter an order appointing counsel for the inmate to determine if there were any justifiable grounds for the inmate to appeal, "and if such determination is in the affirmative, then an appeal may be filed and prosecuted with benefit of counsel even at this late date");

---

[9] In *Lay v. State*, 242 Ga. 225 n.1 (248 SE2d 611) (1978), this Court noted that the "'[o]ut of time appeal' in Georgia appears to have had its genesis in *Byrd v. Smith*, 407 F2d 363 (5th Cir. 1969). Although it has no codical basis, it is granted where the deficiency involves not the trial but the denial of the right of appeal." In *Byrd*, the United States Court of Appeals for the Fifth Circuit held that "the District Court erred in requiring Georgia to retry Petitioner or release him, rather than simply requiring an out of time appeal[.]" 407 F2d at 366.

*McAuliffe v. Rutledge*, 231 Ga. 745, 746 (204 SE2d 141) (1974) (Upon finding that counsel's ineffective assistance deprived the defendant of his appeal of right, this Court reversed the habeas court "with direction that the appellant be allowed, if he so desires, to file an out of time appeal[.]").

Shortly thereafter, defendants began filing out-of-time appeal motions in Georgia's trial courts. In *Neal v. State*, 232 Ga. 96 (205 SE2d 284) (1974), we held that a defendant's motion filed in the trial court based upon a claim arising from "the denial of the right of appeal or of the effective assistance of counsel on appeal" was "in the nature of a petition for the writ of habeas corpus[.]" Therefore, it "should have been filed [as a habeas petition] in the superior court wherein the petitioner is being detained, not in the convicting court." Id. (affirming the trial court's order dismissing the defendant's motion). Notwithstanding this precedent, this Court began reviewing trial court rulings on out-of-time appeal motions without any discussion of the propriety of the out-of-time appeal process in the trial court. See, e.g., *King v. State*, 233 Ga. 630 (212 SE2d 807)

(1975) (Defendant sought an out-of-time appeal in the trial court, contending that he was unaware he "could appeal in forma pauperis and that the court would allow the appeal to be filed without cost, and counsel would be appointed for the purpose of appeal." (punctuation omitted)); *Furgerson v. State*, 234 Ga. 594, 595 (216 SE2d 845) (1975) ("Defendant later filed his pro se motion for out of time appeal [in the trial court], counsel was appointed, the motion was granted, a motion for new trial and an amendment thereto were filed and overruled, and this appeal followed."). Then, in *Rowland v. State* we stated, without any explanation or elaboration, that a defendant may seek an out-of-time appeal in either the habeas court or the trial court:

> The "out-of-time appeal" is granted where the deficiency [of counsel] involves not the trial but the denial of the right of appeal. It serves as a remedy for a habeas corpus petitioner who suffered a constitutional deprivation as well as the criminal defendant who has shown good and sufficient reason to a trial court. A criminal defendant who has lost his right to appellate review of his conviction due to error of counsel is entitled to an out-of-time appeal.

(Citations and punctuation omitted.) 264 Ga. 872, 874-875 (2) (452

21

SE2d 756) (1995).

As these cases demonstrate, our out-of-time appeal jurisprudence has been focused more on the remedial purpose served by an out-of-time appeal and less on the nature of the remedy or the appropriate process for obtaining it. For decades we have allowed two methods for obtaining an out-of-time appeal to co-exist. A request for an out-of-time appeal based on a deprivation of constitutional rights clearly may be brought in a petition for a writ of habeas corpus.[10] The Habeas Corpus Act and a well-developed body of habeas case law govern such petitions, including the defenses available to the State. A request for an out-of-time appeal based on a deprivation of constitutional rights may also be brought in a motion in the trial court.[11] However, the body of case law

---

[10] OCGA § 9-14-42 (a) provides:
    Any person imprisoned by virtue of a sentence imposed by a state court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of this state may institute a proceeding under this article.

[11] We recognize that allowing a motion for an out-of-time appeal to be filed in the trial court is procedurally unusual, although not unique. Ordinarily a trial court's jurisdiction over a criminal case ends following a final conviction

22

governing procedures applicable to such motions is far less

developed, and we have only addressed defenses to such motions as

the State has raised them.[12] We recognize that we have not tried to

categorize the remedy, other than to define it as a remedy for a

constitutional violation that frustrated an appeal of right. We also

and the end of the term of court. For example, "[i]t is well settled that when the term of court has expired in which a defendant was sentenced pursuant to a guilty plea, the trial court lacks jurisdiction to allow the withdrawal of the plea." (Citation and punctuation omitted.) *Rubiani v. State*, 279 Ga. 299 (612 SE2d 798) (2005). Further, "in order to challenge a conviction after it ha[s] been affirmed on direct appeal, criminal defendants [are] required to file an extraordinary motion for new trial, OCGA § 5-5-41, a motion in arrest of judgment, OCGA § 17-9-61, or a petition for habeas corpus. OCGA § 9-14-40." *Harper v. State*, 286 Ga. 216, 217 (1) (686 SE2d 786) (2009). "[A] petition to vacate or modify a judgment of conviction is not an appropriate remedy in a criminal case." Id. at 218. However, it is well established that the trial court retains ongoing jurisdiction to correct a void or illegal *sentence*. Id. at 218 (1) n.1. See also *Williams v. State*, 287 Ga. 192, 193-194 (695 SE2d 244) (2010) (same); *Rooney v. State*, 287 Ga. 1, 2 (2) (690 SE2d 804) (2010) (explaining that "a sentencing court retains jurisdiction to correct a void sentence at any time," and addressing the merits of a void-sentence motion filed more than a decade after conviction (citation and punctuation omitted)).

[12] See, e.g., *Cooper v. State*, 306 Ga. 164, 165 (829 SE2d 365) (2019) ("The trial court was right to deny the second motion for an out-of-time appeal because Cooper's claim that he is entitled to an out-of-time appeal is barred by the doctrine of res judicata."); *Sessions v. State*, 293 Ga. 33, 34 (743 SE2d 391) (2013) ("Since the habeas court found that appellant had forfeited his right to appeal through his own inaction and the habeas court decided the issue of ineffective assistance of counsel adversely to appellant, he is now precluded under the doctrine of collateral estoppel from re-litigating the merits of the issue [in a motion for out-of-time appeal in the trial court]." (citations omitted)).

recognize that the defense of "prejudicial delay" in the filing of a motion for an out-of-time appeal in the trial court has not been raised in or addressed by this Court,[13] although some of our out-of-time appeal cases have involved long delays after conviction.[14] Nevertheless, we see no reason why the State could not raise a prejudicial-delay defense to a motion for an out-of-time appeal filed in the trial court.

"Prejudicial delay," often referred to as "laches," is widely recognized in the common law and in a number of statutes,[15]

---

[13] This Court has held that "the *mere* passage of time does not preclude a defendant from pursuing an out-of-time appeal[.]" (Citation and punctuation omitted; emphasis supplied.) *Hudson v. State*, 278 Ga. 409, 410 (1) (603 SE2d 242) (2004). Whether the passage of time has *prejudiced* the State such that it is appropriate to deny a motion for an out-of-time appeal, however, has not been addressed. Because we have no prior precedent on whether a motion for an out-of-time appeal is subject to a defense based on the defendant's prejudicial delay, we need not engage in a stare decisis analysis on this point.

[14] See, e.g., *Payne v. State*, 289 Ga. 691, 693 (1) (a) (715 SE2d 104) (2011) (The defendant was convicted in 1995. The trial court granted his motion for an out-of-time appeal 15 years later.); *Tyner v. State*, 289 Ga. 592, 593 (2) (714 SE2d 577) (2011) (The defendant was convicted in 1984. The trial court granted his motion for an out-of-time appeal 26 years later.).

[15] See generally 27A AmJur2d Equity §§ 116-118 (discussing the applicability of laches to equitable, quasi-equitable, and legal actions as well as to constitutional claims) and § 124 (discussing the elements or circumstances of laches, generally).

including the habeas statute,[16] and has been applied to many categories of remedies in Georgia, including equitable and extraordinary remedies.[17] While the doctrine of laches is based on more than the mere passage of time, laches is often applied "in obedience and in analogy to the statutes of limitations, in cases where it would not be unjust and inequitable to do so." (Citation, punctuation and emphasis omitted.) *Grant v. Hart*, 192 Ga. 153, 165 (a) (14 SE2d 860) (1941).[18] When a defendant files a motion for an

---

[16] OCGA § 9-14-48 (e).

[17] See, e.g., OCGA § 9-3-3 ("Unless otherwise provided by law, limitation statutes shall apply equally to all courts. In addition, courts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights."); *Marsh v. Clarke County School Dist.*, 292 Ga. 28, 30 (732 SE2d 443) (2012) (Because mandamus is a quasi-equitable, extraordinary remedy, such an action "can be barred by gross laches."); *West v. Fulton County*, 267 Ga. 456, 458 n.3 (479 SE2d 722) (1997) ("[M]andamus as a remedy may not lie where an applicant is guilty of gross laches or has permitted an unreasonable period of time to elapse." (citation omitted)).

[18] Laches operates independently of any statute of limitation. *Cooper v. Aycock*, 199 Ga. 658, 666 (1) (34 SE2d 895) (1945). "

> Whether laches should apply depends on a consideration of the particular circumstances, including such factors as the length of the delay in the claimant's assertion of rights, the sufficiency of the excuse for the delay, the loss of evidence on disputed matters, [and] the opportunity for the claimant to have acted sooner. . . . [These factors are relevant] because laches is not merely a question of time, but principally the question of the inequity in permitting the

25

out-of-time appeal in the trial court, the State may argue that the defendant's delay in doing so has unduly prejudiced the State's ability to respond to the motion. Although a motion for an out-of-time appeal is not directly barred by the application of any statute of limitation, the State may argue and the trial court may consider the time periods, factors, and other criteria set out in the most analogous limitation and laches provisions — those found in the Habeas Corpus Act — in determining whether the State's defense has merit and the defendant's motion should be dismissed. See OCGA §§ 9-14-42 (c); 9-14-48 (e). See also *Wiley v. Miles,* 282 Ga. 573, 577 (3) (652 SE2d 562) (2007).

In *Wiley*, by the time the defendant had filed his habeas petition,

> the trial judge, the prosecutors, and his own defense attorney had all died. Unsurprisingly, the court reporter no longer had any specific memory of the plea colloquy, and the Fulton County Superior Court, after keeping the court reporter's notes for nearly a quarter of a century, had finally destroyed them pursuant to its records

claim to be enforced.

(Citations omitted.) *Hall v. Trubey,* 269 Ga. 197, 199 (1) (498 SE2d 258) (1998).

26

retention policy. By the time the records were destroyed, [the defendant] had been through serving the prison term imposed for the two 1965 convictions for more than a decade.

Id. For those reasons, the habeas court correctly found that the defendant's "38-year delay in filing his petition for writ of habeas corpus challenging the 1965 guilty pleas prejudiced the government." Id.

At this time, we need not define the exact parameters of the prejudicial delay defense when raised in motions filed in the trial court, as the State did not raise this defense below. Further, it is not necessary in this case to categorize the out-of-time appeal remedy, to decide more about the process for obtaining it, or to determine whether the process in the trial court should be maintained. In particular, we do not address whether a motion for an out-of-time appeal may be categorized as an extraordinary or equitable remedy or whether the availability of habeas corpus relief, pursuant to OCGA § 9-14-40 et seq., constitutes an "adequate remedy at law." Cf. *Mitchum v. State*, 307 Ga. 878, 884 (1) (c) (834 SE2d 65) (2019) (holding that constitutional claims that may be addressed by the

adequate remedy of habeas corpus cannot be pursued through an extraordinary motion for a new trial). The trial court process is faster and more efficient than the habeas process in many cases, and eliminating post-conviction delay before appeal is an important interest in our criminal justice system. See *Owens v. State*, 303 Ga. 254, 258 (811 SE2d 420) (2018) (reminding the bench and bar that we do not condone inordinate delays in the appellate process as such "delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial" (citation and punctuation omitted)). But the trial court process is certainly an exception to the general rule that a trial court's jurisdiction ends following a final conviction and the end of the term of court. These issues have not been fully briefed in this case, and determining whether the out-of-time appeal process in the trial court should be maintained would involve a complex stare decisis analysis. Indeed, whether sound reasons exist to direct all out-of-time appeal requests to habeas proceedings is a matter that might well be better addressed by legislation than by case law. The General Assembly

28

can balance the competing policy interests with broader input by all those affected, and those considerations may change as the effects of our holdings above ripple through the criminal justice system. In any event, particularly given the significant changes made to out-of-time appeal law in the rest of this opinion, we believe it best to await a case that more clearly addresses these issues.

3. We now apply these holdings to the case before us. Collier claims that he is entitled to an out-of-time appeal because his counsel was ineffective in failing to inform him of his right to a direct appeal from his guilty plea. Because the trial court denied Collier's motion for an out-of-time appeal without holding an evidentiary hearing, we cannot determine from the appellate record whether Collier's failure to timely pursue an appeal was actually the result of his counsel's deficient performance. Moreover, we recognize that, given the clear, though incorrect, mandate of the case law overruled by this opinion, Collier has not had a full and fair opportunity to pursue his motion for an out-of-time appeal before the trial court, the State has not had a full and fair opportunity to raise defenses,

and the trial court has not had the benefit of this opinion to guide its consideration of the parties' evidence and arguments. Consequently, we vacate the order denying Collier's motion for an out-of-time appeal, and we remand the case to the trial court for proceedings consistent with this opinion.

*Judgment vacated and case remanded. All the Justices concur, except Blackwell, Boggs, Peterson, and Bethel, JJ., who concur specially.*

APPENDIX.

We overrule the cases listed below because each relied for its holding on at least one of the principles of law overruled above. We note that this list may not be exhaustive. Further, we disapprove of language used in any Georgia appellate decision that suggests an appeal will lie from a judgment entered on a guilty plea only if the issue on appeal can be resolved by facts appearing in the record or that a defendant who seeks an out-of-time appeal on the ground that his right to appeal was thwarted by counsel's ineffectiveness must show that the appeal would have had merit.

Supreme Court of Georgia cases overruled in whole or in part by this opinion: *McGee v. State*, 304 Ga. 683 (820 SE2d 694) (2018); *Bennefield v. State*, 304 Ga. 491, 492 (2) (819 SE2d 10) (2018); *Frisby v. State*, 304 Ga. 271, 274 (2) (818 SE2d 543) (2018); *Usher v. State*,

303 Ga. 622, 622-623 (814 SE2d 363) (2018); *Snelson v. State*, 303 Ga. 504, 506-507 (813 SE2d 357) (2018); *Deloney v. State*, 302 Ga. 142, 145 (2) (805 SE2d 881) (2017); *Houston v. State*, 302 Ga. 35, 36 (2) (805 SE2d 34) (2017); *Henderson v. State*, 300 Ga. 526, 527 (1) (796 SE2d 681) (2017); *Mims v. State*, 299 Ga. 578, 579-581 (1) (787 SE2d 237) (2016); *Hudson v. State*, 298 Ga. 536, 537-538 (3) (783 SE2d 130) (2016); *Freeman v. State*, 297 Ga. 146, 148 (1) (771 SE2d 889) (2015); *Wetherington v. State*, 296 Ga. 451, 453-454 (1) (769 SE2d 53) (2015); *Rhodes v. State*, 296 Ga. 418, 420-421 (2) (768 SE2d 445) (2015); *Coulter v. State*, 295 Ga. 699, 700-701 (1) (763 SE2d 713) (2014); *Grace v. State*, 295 Ga. 657, 658-659 (2) (b) (763 SE2d 461) (2014); *Hagan v. State*, 294 Ga. 716, 717-718 (3) (755 SE2d 734) (2014); *Burch v. State*, 293 Ga. 816 (750 SE2d 141) (2013); *Lewis v. State*, 293 Ga. 544, 548 (2) (748 SE2d 414) (2013); *Henderson v. State*, 293 Ga. 6, 7-8 (2) (743 SE2d 19) (2013); *Stephens v. State*, 291 Ga. 837, 837-840 (2), (4) (733 SE2d 266) (2012); *Gibson v. State*, 290 Ga. 516, 517 (2) (b) (722 SE2d 741) (2012); *Brown v. State*, 290 Ga. 321 (2), 322 (5) (720 SE2d 617) (2012); *Upperman v. State*, 288 Ga.

447, 448 (1) (705 SE2d 152) (2011); *Smith v. State*, 287 Ga. 391, 404-405 (4) (697 SE2d 177) (2010); *Johnson v. State*, 286 Ga. 432, 432-433 (687 SE2d 833) (2010); *Clayton v. State*, 285 Ga. 404, 406 (677 SE2d 126) (2009); *Barlow v. State*, 282 Ga. 232, 233 (647 SE2d 46) (2007); *Turner v. State*, 281 Ga. 435, 436 (2) (637 SE2d 384) (2006); *Heard v. State*, 280 Ga. 348, 348-349 (1) (627 SE2d 12) (2006); *Johnson v. State*, 275 Ga. 390, 391 (1), (2) (565 SE2d 805) (2002); *Barnes v. State*, 274 Ga. 783 (559 SE2d 446) (2002); *Baker v. State*, 273 Ga. 842, 843 (3) (545 SE2d 879) (2001); *Grimmette v. State*, 273 Ga. 552 (1) (544 SE2d 427) (2001); *Wheeler v. State*, 269 Ga. 547, 548 (499 SE2d 629) (1998); *Smith v. State*, 269 Ga. 21, 22 (494 SE2d 668) (1998); *Stewart v. State*, 268 Ga. 886, 887 (494 SE2d 665) (1998); *Grantham v. State*, 267 Ga. 635, 635-636 (481 SE2d 219) (1997); *Smith v. State*, 266 Ga. 687, 687-688 (470 SE2d 436) (1996); *Caine v. State*, 266 Ga. 421, 421-422 (467 SE2d 570) (1996); *Morrow v. State*, 266 Ga. 3 (463 SE2d 472) (1995).

Court of Appeals of Georgia cases overruled or disapproved in whole or in part by this opinion: *Cooper v. State*, 348 Ga. App. 649,

651-653 (4) (824 SE2d 571) (2019); *Lamb v. State*, 341 Ga. App. 245, 246-247 (799 SE2d 589) (2017); *Rutledge v. State*, 340 Ga. App. 765, 767-768 (798 SE2d 355) (2017); *Watkins v. State*, 340 Ga. App. 218 (797 SE2d 144) (2017); *Surry v. State*, 340 Ga. App. 8 (795 SE2d 336) (2016); *Reid v. State*, 339 Ga. App. 772, 773 (1) (792 SE2d 732) (2016); *Chism v. State*, 338 Ga. App. 463, 465-466 (789 SE2d 814) (2016); *Smith v. State*, 335 Ga. App. 639 (781 SE2d 400) (2016); *McCranie v. State*, 335 Ga. App. 548, 550 (2) (782 SE2d 453) (2016); *Raheem v. State*, 333 Ga. App. 821, 823 (777 SE2d 496) (2015); *Jones v. State*, 332 Ga. App. 506, 507-508 (773 SE2d 463) (2015); *Maines v. State*, 330 Ga. App. 247, 248 (1) (765 SE2d 382) (2014); *Martin v. State*, 329 Ga. App. 10, 11-12 (763 SE2d 363) (2014); *Pineda v. State*, 328 Ga. App. 806 (762 SE2d 626) (2014); *Lewis v. State*, 326 Ga. App. 529 (757 SE2d 170) (2014); *Harris v. State*, 325 Ga. App. 568 (754 SE2d 148) (2014); *Merilien v. State*, 321 Ga. App. 727 (742 SE2d 754) (2013); *LaBrew v. State*, 315 Ga. App. 865, 866 (729 SE2d 33) (2012); *Childs v. State*, 311 Ga. App. 891 (717 SE2d 509) (2011); *Spencer v. State*, 309 Ga. App. 630 (1) (710 SE2d 837) (2011); *Shelton v. State*,

307 Ga. App. 599, 600 (1) (705 SE2d 699) (2011); *English v. State*, 307 Ga. App. 544, 546 (1) (705 SE2d 667) (2010); *Hill v. State*, 306 Ga. App. 285 (701 SE2d 909) (2010); *Harwood v. State*, 303 Ga. App. 23 (692 SE2d 665) (2010); *Golden v. State*, 299 Ga. App. 407, 412 (4) (683 SE2d 618) (2009); *Walker v. State*, 296 Ga. App. 763 (675 SE2d 496) (2009); *Olguin v. State*, 296 Ga. App. 208 (674 SE2d 89) (2009); *Sweeting v. State*, 291 Ga. App. 693, 694 (662 SE2d 785) (2008); *Ethridge v. State*, 283 Ga. App. 289 (641 SE2d 282) (2007); *Lamb v. State*, 282 Ga. App. 756, 757-758 (639 SE2d 641) (2006); *Gray v. State*, 273 Ga. App. 441, 442 (1) (b) (615 SE2d 248) (2005); *Terrell v. State*, 272 Ga. App. 297, 298 (2) (612 SE2d 32) (2005); *Shinholster v. State*, 270 Ga. App. 736 (607 SE2d 910) (2004); *Dykes v. State*, 266 Ga. App. 635 (597 SE2d 468) (2004); *Jackson v. State*, 266 Ga. App. 461 (597 SE2d 535) (2004); *Pitts v. State*, 265 Ga. App. 633, 634-635 (2) (d) (595 SE2d 322) (2004); *Kane v. State*, 265 Ga. App. 250, 250-251 (1) (593 SE2d 711) (2004); *Rittenberry v. State*, 260 Ga. App. 571 (580 SE2d 321) (2003); *Shumake v. State*, 257 Ga. App. 209, 209-210 (1) (570 SE2d 648) (2002); *Wheeler v. State*, 255 Ga. App. 249 (564

SE2d 765) (2002); *Wallace v. State*, 253 Ga. App. 400, 400-401 (559 SE2d 152) (2002); *Neisler v. State*, 253 Ga. App. 193, 195-196 (1) (556 SE2d 258) (2001); *Bryant v. State*, 245 Ga. App. 892, 892-894 (539 SE2d 523) (2000); *Rodriguez-Martinez v. State*, 243 Ga. App. 409, 410-411 (2) (533 SE2d 443) (2000); *Gibbs v. State*, 239 Ga. App. 249, 249-250 (1) (a) (519 SE2d 511) (1999); *Flanigan v. State*, 238 Ga. App. 296 (1) (517 SE2d 569) (1999); *Guest v. State*, 236 Ga. App. 458 (511 SE2d 880) (1999); *Echols v. State*, 231 Ga. App. 501 (498 SE2d 66) (1998); *Manion v. State*, 228 Ga. App. 270, 270-271 (491 SE2d 506) (1997); *Atkinson v. State*, 219 Ga. App. 366 (466 SE2d 32) (1995).

PETERSON, Justice, concurring specially.

We have created out of whole cloth what appellate judges of this state have recognized for nearly 20 years is a tangled mess of post-conviction jurisprudence. We never should have started making things up, and we ought to stop now. I would not tinker at the margins of the mess we have made (as the well-intentioned majority does in Division 2). But I fear that our mess has become so large that the effort to untangle it in a single case could be overreaching and unduly disruptive to the system that has built up around it. We may need the General Assembly to save us from ourselves.

In *Neal v. State*, 232 Ga. 96 (205 SE2d 284) (1974), we

37

considered an appeal from the trial court's dismissal of a criminal defendant's motion seeking an appeal from his guilty plea seven years late. The trial court held that there was no right to appeal from a guilty plea and dismissed the motion. On appeal, we acknowledged that there actually was a right to appeal from a guilty plea, and that the criminal defendant had the right to bring a claim that his right to appeal was denied him in violation of the right to effective counsel. Id. at 96. But we concluded that the post-conviction remedy for such a violation was to be found in habeas. Id. We determined, therefore, that his motion should be treated as a habeas petition, even though it was not framed as a habeas petition or filed in the superior court of the circuit in which he was incarcerated, as habeas petitions must be. Accordingly, we affirmed the trial court's dismissal because the motion should have been dismissed for failure to be filed in the circuit in which the defendant was incarcerated. Id. at 96-97.

But the very next year, without citing any authority at all, much less acknowledging our contrary holding in *Neal*, we

considered on the merits stand-alone motions for out-of-time appeal filed in the courts of conviction. See *Furgerson v. State*, 234 Ga. 594 (216 SE2d 845) (1975); *King v. State*, 233 Ga. 630 (212 SE2d 807) (1975). And then, as the majority opinion thoroughly lays out, it was off to the races.

Out-of-time appeals properly began as a remedy for the violation of a criminal defendant's Sixth Amendment right to effective assistance of counsel. But permitting defendants an out-of-time appeal as a *remedy* for a constitutional violation is one thing; it's quite another to create out of whole cloth a new *procedural vehicle*, i.e., a *motion* for out-of-time appeal, in which the constitutional claims can be brought to obtain that remedy. As the majority explains, we did the latter without any analysis whatsoever.

But after decades of ignoring the *Neal* holding, we recently decided that one statutorily established procedural vehicle □ an extraordinary motion for new trial □ was inappropriate for constitutional claims, and held those claims should be brought in

habeas instead. See *Mitchum v. State*, 307 Ga. 878, 884 (1) (c) (834 SE2d 65) (2019). It seems to me that our holding in *Mitchum* has implications for our post-conviction litigation system beyond the procedural vehicle that was at issue in that case.

Creating a stand-alone procedure for out-of-time appeal claims is far from the only part of our post-conviction litigation jurisprudence that we've made up. In many cases, motions for new trial have metastasized into all but a retrial of the entire case due to our requirements that ineffectiveness claims be raised in such a motion to avoid waiver, see *Smith v. State*, 255 Ga. 654 (341 SE2d 5) (1986); *Thompson v. State*, 257 Ga. 386 (359 SE2d 664) (1987), and that the failure to request a hearing on a motion for new trial premised on such a claim results in the waiver of the right to a hearing, *Dawson v. State*, 258 Ga. 380, 381 (2) (369 SE2d 897) (1988). When a motion for out-of-time appeal is granted, we have held that grant entitles the movant not only to an appeal, but also to file a motion for new trial (even without a showing that counsel's deficient performance had frustrated the filing of such a motion) and

40

have an evidentiary hearing. See *Ponder v. State*, 260 Ga. 840, 841-842 (1) (400 SE2d 922) (1991).[19]

What the majority does not say today, but may be a future implication of its holding, is that a granted motion for out-of-time appeal from a guilty plea may carry with it a similar opportunity to expand the record with appointed counsel. Although we have not yet held that a granted motion for out-of-time appeal from a guilty plea authorizes not only an appeal but also a motion to withdraw the guilty plea, such a conclusion would appear to be merely a logical extension of statements we have previously made. See *Gooden v. State*, 305 Ga. 835, 837 n. 3 (828 SE2d 302) (2019) (recognizing no discernable basis on which to distinguish motions for new trial and motions to withdraw a guilty plea as to when ineffective assistance claims can be raised). And indeed, the Court of Appeals has already allowed such motions. See *Dawson v. State*, 302 Ga. App. 842, 843-844 (691 SE2d 886) (2010). Such an expansion of post-conviction litigation options may have sweeping consequences for our criminal

---

[19] This makes no sense whatsoever as a remedy for a frustrated *appeal*.

justice system.

Indeed, many of the complications arising from our post-conviction relief jurisprudence arise because Georgia is one of few jurisdictions to allow — much less require — expansion of the record for ineffectiveness claims to occur on direct appeal with appointed counsel. The federal system — because of the lack of evidentiary hearings on motions for new trial — resolves most of these issues in habeas. See *Commonwealth v. Grant*, 813 A2d 726, 734 n. 12 (Pa. 2002) (collecting federal cases). So do most of our sister states. See *id.* at 735 n. 13 (collecting state cases). We may well have had good policy reasons for developing the system the way we have, but there can be no doubt that our reasons — to the extent that we've had any — have been purely "policy." See *Ponder*, 260 Ga. at 840.

From my perspective, ensuring that ineffectiveness claims are litigated with the assistance of counsel is a good thing. The assistance of counsel increases the likelihood that meritorious claims are raised and litigated properly. It usually makes life easier on judges. And requiring the litigation of all these issues on direct

appeal will, in theory, achieve finality sooner.[20] But these benefits also come with costs. And, particularly given the right to conflict-free counsel on direct appeal, see *Garland v. State*, 283 Ga. 201 (657 SE2d 842) (2008), all of these procedures have serious financial and staffing implications for our criminal justice system.

Where the federal or state constitution requires a particular procedural vehicle or safeguard, the cost of satisfying that requirement is of little moment. But things are different when we create a rule not required by constitution or statute that has the effect of expanding the State's obligation to provide counsel. When we do that, we are making public policy. But that's not how public policy is supposed to be made; that's what the General Assembly is for. See, e.g., *Duke v. State*, 306 Ga. 171 (829 SE2d 348) (2019) (overruling a judicially created rule allowing this Court to consider interlocutory appeals lacking a certificate of immediate review because we lacked authority to alter the legislature's jurisdictional

---

[20] This benefit has all too often been little more than theoretical. See *Owens v. State*, 303 Ga. 254, 259 (4) & nn.3, 4 (811 SE2d 420) (2018) (citing cases involving extreme delays in resolving post-trial, pre-appeal litigation).

requirements and could not usurp the exclusive authority vested in trial courts to decide, in the first instance, whether an issue merits interlocutory consideration); *State v. Orr*, 305 Ga. 729, 735-736 (2) (827 SE2d 892) (2019) (concluding that an exclusionary evidence rule, created by this Court with dubious authority and based on "the Court's view of good policy," was abrogated by the legislature's enactment of the new Evidence Code).

Today's necessary correction as to the proper threshold for granting an out-of-time appeal directly from a judgment entered on a guilty plea may well result in a flood of motions for tardy appeals by inmates whose satisfaction with their plea deal has dissipated over the course of their years in prison. That result does not flow directly from the federal constitutional rule that the majority applies, but is a function of applying that rule correctly in the context of the procedural vehicle of motions for out-of-time-appeal that we ourselves have created.

By allowing the out-of-time remedy to be applied on direct appeal, our post-conviction jurisprudence has, as Justice Fletcher

44

observed 27 years ago, created a "tangle of procedural rules" that is both "confusing" and "incredible." *Maxwell v. State*, 262 Ga. 541, 543 (422 SE2d 543) (1992) (Fletcher, J., concurring specially). The year after, Chief Judge Pope of our Court of Appeals suggested that the General Assembly should "unweave" that tangle. *King v. State*, 208 Ga. App. 77, 81 (430 SE2d 640) (1993) (Pope, C. J., concurring specially). It may well be that at this point, the tangle is beyond our unweaving. But it is not beyond the power of the General Assembly. None of the procedures that we have created are of constitutional dimension, and thus they can be changed or eliminated by ordinary legislation if the General Assembly so desires.

I concur fully in Division 1 of the Court's opinion. Our longstanding holding that a defendant seeking an out-of-time appeal directly from a judgment entered on a guilty plea must satisfy the prejudice component of the *Strickland* standard by showing that his appeal would have had merit is now an error of federal constitutional law. We may not persist in that error. And our decision in *Morrow v. State*, 266 Ga. 3 (463 SE2d 472) (1995), was a

barnacle on that error that must be jettisoned with it. But for the reasons explained above, I can concur in the judgment of Division 2 only to the extent that it correctly observes that none of our cases have held that the State cannot assert a defense of prejudicial delay.

I am authorized to state that Justice Blackwell, Justice Boggs, and Justice Bethel join in this concurrence.

DECIDED OCTOBER 21, 2019 – RECONSIDERATION DENIED NOVEMBER 14, 2019.
Murder. Macon Superior Court. Before Judge Smith.
*Brandon A. Bullard, Veronica M. O'Brady*, for appellant.
*Lewis R. Lamb, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.